# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LOABAT AMIRI, *et al*.,

      Plaintiffs,               Civil No. 17-12188
                                            Hon. Thomas L. Ludington
v.                                       Mag. Judge Patricia T. Morris

ELAINE C. DUKE, *et al*.,

      Defendants.
_____/

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendants, by and through their undersigned counsel, move this Court under Federal Rules of Civil Procedure 12(b)(1), or, in the alternative, Rule 12(b)(6) for dismissal of this case. The grounds for this motion are set forth more fully in the attached supporting brief.

Pursuant to Local Rule 7.1(a), the undersigned counsel contacted counsel for Plaintiffs by email on October 19, 2017.  The undersigned counsel explained the nature of the motion and its legal basis, specifically the doctrine of consular nonreviewability, and requested concurrence.  Plaintiffs' counsel advised that she did not concur.

CHAD A. READLER
Acting Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

JEFFREY S. ROBINS
Assistant Director


Dated:  October 19, 2017

Respectfully submitted,

/s/ *Aaron Goldsmith*
AARON S. GOLDSMITH
Senior Litigation Counsel
Office of Immigration Litigation
District Court Section
U.S. Department of Justice
P.O. Box 868, Ben Franklin Station
Washington, DC  20044
Telephone:  (202) 532-4107
Facsimile:  (202) 305-7000
Aaron.Goldsmith@usdoj.gov

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

LOABAT AMIRI, *et al*.,

        Plaintiffs,

    v.

ELAINE C. DUKE, *et al*.,

        Defendants.

_____/

Civil No. 17-12188
Hon. Thomas L. Ludington
Mag. Judge Patricia T. Morris

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## STATEMENT OF ISSUES PRESENTED

May a district court second-guess a consular officer's determination to refuse a visa for terrorist activities in the absence of specific factual allegations of bad faith by the consular officer?

## MOST CONTROLLING AUTHORITY

*Kerry v. Din*, 135 S. Ct. 2128 (2015).

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................1

STATEMENT OF FACTS ..................................................................1

PROEDURAL BACKGROUND ........................................................3

LEGAL BACKGROUND ..................................................................4

     I.     The Immigrant Visa Process .................................................4

     II.    The Doctrine of Consular Nonreviewability.........................5

ARGUMENT .....................................................................................10

     I.     The Amended Complaint does not provide any basis for looking behind the consular officer's determination that Mr. Latif is not eligible for a visa. ...............................................................12

     II.    Plaintiffs failed to make any showing of bad faith. ............12

     III.   None of the Plaintiffs have standing to challenge a consular officer's refusal of a visa..................................................................15

     IV.   There is an additional reason why Plaintiff has failed to state a claim for violation of the APA (Count 8):  the final agency action rule . ....16

     V.    There are additional reasons why Plaintiff fail to state a claim under the First, Fifth, or Sixth Amendments (Counts 1, 2, 3, and 9)............17

     VI.   There are additional reasons why Plaintiffs fail to state a claim under the INA (Counts 6, 7). ........................................................23

     VII.  There are additional reasons why Plaintiffs fail to state a claim under Article I, Section 9 (Bill of Attainder) (Count 5)................................23

     VIII. Plaintiffs fail to allege any legal basis for recovering monetary damages. ..............................................................................24

i

CONCLUSION ...................................................................................................25

CERTIFICATE OF SERVICE ..............................................................................26

## TABLE OF AUTHORITIES

*Alger Bible Baptist Church v. Township of Moffatt*,
No. 13-13637, 2014 WL 462354 at * 7 (E.D. Mich. Feb. 5, 2014) ................ 21, 23

*Almario v. Att'y Gen.*,
   872 F.2d 147 (6th Cir. 1989)....................................................................12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................17

*Bangura v. Hansen*,
   434 F.3d 487 (6th Cir. 2006)....................................................... 9,15, 16

*Barker v. State of Ohio*,
   330 F.2d 594 (6th Cir. 1964)....................................................................21

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................17

*Ben-Issa v. Reagan*,
   645 F. Supp. 1556 (W.D. Mich. 1986) ..................................... 8, 15, 16

*Bennett v. Spear*,
   520 U.S. 154 (1997) .............................................................. 16, 17

*Beydoun v. Sessions*,
   871 F.3d 459 (6th Cir. 2017).......................................................... 16, 21

*Bustamante v. Mukasey*,
   531 F.3d 1059 (9th Cir. 2008)...................................................................9

*Butera v. District of Columbia*,
   235 F.3d 637 (D.C. Cir. 2001) ..................................................................9

*Center for Bio-Ethical Reform, Inc. v. Napolitano*,
   648 F.3d 365 (6th Cir. 2011).................................................... 18, 19, 22

*Crawford v. Washington*,
　541 U.S. 36 (2004) ............................................................................19

*Doe v. Michigan Dep't of State Police*,
　490 F.3d 491 (6th Cir. 2007)..........................................................20

*Garcia v. Baker*,
　765 F. Supp. 426 (N.D. Ill. 1990) ......................................................11

*Gogilashvili v. Holder*,
　No. 11-CV-01502 (RRM), 2012 WL 2394820
　(E.D.N.Y. June 25, 2012) .......................................................... 6, 9, 10

*Green v. Transp. Sec. Admin.*,
　351 F. Supp. 119 (W.D. Wash. 2005)................................................16

*Haig v. Agee*,
　453 U.S. 280 (1981) ........................................................................15

*Harkness v. Secretary of Navy*,
　858 F.3d 437 (6th Cir. 2017)..........................................................19

*Hazama v. Tillerson*,
　851 F.3d 706 (7th Cir. 2017)........................................................ 4, 5,7

*Johnson v. Martin*,
　943 F.2d 15 (7th Cir. 1991)..........................................................20

*Kerry v. Din*,
　135 S. Ct. 2128 (2015) ............................................................ passim

*League of United Latin Am. Citizens v. Bredesen*,
　500 F.3d 523 (6th Cir. 2007)..........................................................16

*Lemon v. Kurtzman,*
　403 U.S. 602 (1971) ........................................................................19

*Lihua Xu v. U.S. Dep't of State*,
　No. 2:08-cv-1023, 2010 WL 3942723 (S.D. Ohio Oct. 6, 2010) ............. 5, 11, 13

*Mandel v. Kleindiest*,
    408 U.S. 753 (1972) ..................................................................................... passim

*Marks v. United States*,
    430 U.S. 188 (1977) ............................................................................................7

*McNeil v. United States*,
    508 U.S. 106 (1993) ..........................................................................................24

*Mozert v. Hawkins Cty. Bd. of Educ.*,
    827 F.2d 1058 (6th Cir. 1987) .................................................................... 19, 20

*Musta v. U.S. Dep't of Justice*,
    179 F.3d 1017 (6th Cir. 1999) ..........................................................................21

*Nikolao v. Lyon*,
    238 F. Supp. 3d 964 (E.D. Mich. 2017) ...........................................................19

*Nixon v. Adm'r of Gen Servs.*,
    433 U.S. 425 (1977) ..........................................................................................24

*Paul v. Davis*,
    424 U.S. 693 (1976) ..........................................................................................20

*Saavedra Bruno v. Albright*,
    197 F.3d 1153 (D.C. Cir. 1999) ..................................................................5, 10

*Singh v. Tillerson*,
    No. 16-922 (CKK), 2017 WL 4232552 (D.D.C. Sept. 21, 2017)................ passim

*Song v. Elyria*,
    985 F.2d 840 (6th Cir. 1993) .............................................................................24

*Tarhuni v. Holder*,
    8 F. Supp. 3d 1253 (D. Or. 2014) .....................................................................20

*United States ex rel. Knauff v.* Shaughnessy,
    338 U.S. 537 (1950) ............................................................................................8

*United States v. Gaubert*,
    499 U.S. 315 (1991) ................................................................................25

*United States v. Hartwell*,
    436 F.3d 174 (3d Cir. 2006)...................................................................20

*United States v. Lovett*,
    328 U.S. 303 (1946) ...............................................................................24

*Warren v. City of Athens*,
    411 F.3d 697 (6th Cir. 2005)..................................................................19

*Wedgewood Ltd. P'ship of Liberty, Ohio*,
    610 F.3d 340 (6th Cir. 2010)..................................................................18

*Zilich v. Longo*,
    34 F.3d 359 (6th Cir. 1994)....................................................................23

## STATUTES

8 U.S.C. § 1181(a) .......................................................................................4

8 U.S.C. § 1182(a)(3)(B) ..................................................................... passim

8 U.S.C. § 1201(a)(1)...................................................................................4

8 U.S.C. § 1201(g) .......................................................................................4

8 U.S.C. § 1252(e) .......................................................................................2

8 U.S.C. § 1361 ...........................................................................................4

28 U.S.C. § 1346(b) ...................................................................................24

28 U.S.C § 2680(a) ....................................................................................24

Pub. L. No. 87-301......................................................................................6

Pub. L. No. 107-296....................................................................................6

## **FEDERAL RULES**

Fed. R. Civ. P. 15(a)(3)..................................................................4

## **REGULATIONS**

8 C.F.R. § 235.1(f) ....................................................................12

22 C.F.R. § 40.6 ..........................................................................4

22 C.F.R. § 42.71 .........................................................................4

## **OTHER AUTHORITIES**

73 Fed. Reg. 77778 (Dec. 19, 2008) .......................................22

H.R. 1345 ...................................................................................6

H.R. 2975 ...................................................................................6

H.R. 3305 ...................................................................................6

H.R. 4539 ...................................................................................6

## INTRODUCTION

On March 14, 2016, a consular officer refused a visa to Plaintiff Mohammad Amin Latif on the grounds that he is inadmissible for terrorist activities under 8 U.S.C. § 1182(a)(3)(B).  Plaintiffs are challenging this decision, or in the alternative, seeking an order requiring the Government to provide an explanation for this determination.  Plaintiffs' claims are barred by the doctrine of consular nonreviewability and, as a result, this action should be dismissed.  *See Kerry v. Din*, 135 S. Ct. 2128 (2015).  Moreover, in the alternative, even if Plaintiffs' claims were not barred in their entirety by the doctrine of consular nonreviewability, Plaintiffs' claims should be dismissed for failure to state a claim because they only make unsupported legal allegations.

## STATEMENT OF FACTS

Plaintiff Loabat Amiri is a lawful permanent resident of the United States. Dkt. 19 at ¶ 14.  Plaintiffs allege that Dr. Amiri filed a request on behalf of Plaintiff Mohammad Latif, her husband and a citizen of Great Britain, to classify him as the spouse of a lawful permanent resident.  *Id*. at ¶ 49.  Mr. Latif made a

visa application and was interviewed by a consular officer at the U.S. Embassy in London.  *Id*. at ¶ 50.[1]

On March 14, 2016, a consular officer informed Mr. Latif that he had been found ineligible to receive an immigrant visa under 8 U.S.C. § 1182(a)(3)(B).  *See* Dkt. 19 at ¶¶ 50, 86.  Plaintiffs are challenging this finding regarding eligibility for a visa.[2]  In addition, Mr. Latif alleges that he sought more information from the U.S. Department of State ("DOS") regarding the basis for the refusal and that DOS declined to provide such information.  Dkt. 19 at ¶ 51.

---

[1]  Their twenty year old child, Farbod Latif, is also a plaintiff in this case and is challenging the refusal of the visa to his father.  *See* Dkt. 19 at ¶ 27.

[2]  Plaintiffs' Amended Complaint also references a 2010 order of expedited removal which resulted in Mr. Latif being barred from entering the United States for five years.  *See* Dkt. 19 at ¶ 42.  Defendants do not construe Plaintiffs' Amended Complaint as challenging this 2010 order of expedited removal and note that the "Relief Requested" section of the Amended Complaint makes no mention of the order of expedited removal and does not seek any relief with respect to it.  *See id*. at 33.  If Plaintiffs were to challenge this order of expedited removal, such a challenge would be barred by 8 U.S.C. § 1252(e) and the six-year statute of limitations.  Moreover, Plaintiffs would lack standing to challenge the five-year bar because more than five years have passed since the order was entered against Mr. Latif.  As a result, Plaintiffs would lack an injury-in-fact that is traceable to the entry of the 2010 order of expedited removal and this Court could not provide any relief to Plaintiffs with respect to this order.

## PROCEDURAL BACKGROUND

On July 5, 2017, Plaintiffs filed a complaint alleging that a consular officer's finding of inadmissibility under 8 U.S.C. § 1182(a)(3)(B) was a violation of the Administrative Procedure Act ("APA"), the Immigration and Nationality Act ("INA"), and the U.S. Constitution.  Dkt. 1.[3]

On September 5, 2017, the parties submitted a stipulation and order providing that Defendants would have until October 10, 2017, to respond to the complaint.  *See* Dkt. 14 (entering this order).  The next day, on September 6, 2017, Plaintiffs filed a motion to amend.  Dkt. 13.  On September 20, 2017, Plaintiffs filed a notice withdrawing the motion and also filed an unopposed motion to amend.  Dkt. 6-7.  On September 25, 2017, this Court granted the second motion to amend and directed Plaintiffs to file their amended complaint by October 5, 2017.

---

[3]  Specifically, Plaintiffs allege that the Government's actions violated the First Amendment (Count 1), the Equal Protection Clause of the Fifth Amendment (Count 2), the Procedural Due Process Clause of the Fifth Amendment (Count 3), the "right to travel" under the "Substantive Due Process Clause" of the Fifth Amendment (Count 4), Article 1, Section 9 of the U.S. Constitution (Bill of Attainder) (Count 5); the Immigration and Nationality Act ("INA") (Counts 6 and 7), the Administrative Procedure Act ("APA") (Count 8); the Confrontation Clause of the Sixth Amendment (Count 9), and the Substantive Due Process Clause of the Fifth Amendment (Count 10).  Dkt. 19.  Plaintiffs fail to specify which Plaintiff is bringing which legal claim against which Defendant and what relief is sought with respect to the particular claim.  Given Plaintiffs' overlapping claim, this Court may, in the exercise of its discretion, order Plaintiffs to refile the lawsuit with greater clarity.

On October 5, 2017, Plaintiffs filed and served their Amended Complaint. Dkt. 19.  Under Rule 15(a)(3), Defendants had 14 days from the date of this amended pleading to file their response.  Fed. R. Civ. P. 15(a)(3).  Defendants move to dismiss for lack of jurisdiction and for failure to state a claim.

## LEGAL BACKGROUND

### I.     The Immigrant Visa Process

Generally, an alien may not be admitted to the United States without having been issued an immigrant or nonimmigrant visa.  8 U.S.C. §§ 1181(a), 1182(a)(7). The decision to grant or deny a visa application rests with the consular officer.  *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. § 42.71, 42.81; 8 U.S.C. § 1361 (providing that the applicant has the burden of proof to establish eligibility for a visa "to the satisfaction of the consular officer").  With certain exceptions not relevant here, no visa "shall be issued to an alien" if "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," or if "the consular officer knows or has reason to believe" that the alien is ineligible.  8 U.S.C. § 1201(g); *see* 22 C.F.R. § 40.6.

A consular officer's citation to 8 U.S.C. § 1182(a)(3)(B), the terrorist activities bar, constitutes a facially legitimate and bona fide reason to refuse to issue an immigrant visa.  *See, e.g., Din*, 135 S. Ct. at 2141; *Hazama v. Tillerson*, 851 F.3d 706, 709 (7th Cir. 2017).

## II.   The Doctrine of Consular Nonreviewability

The Supreme Court has long recognized the doctrine of consular nonreviewability—the rule that, in the absence of affirmative congressional authorization for an alien to challenge the denial of a visa, the alien cannot assert any right to review.  *See Mandel v. Kleindiest*, 408 U.S. 753, 762 (1972);[4] *see, e.g., Saavedra Bruno v. Albright,* 197 F.3d 1153, 1159 (D.C. Cir. 1999) ("The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review, at least unless Congress says otherwise."); *Hazama*, 851 F.3d at 708 ("In general, courts have no authority to second-guess the Executive's decision–rulings that are typically made by consular officers of the Department of State").  This doctrine applies regardless of how the claims are cast.  *See, e.g., Lihua Xu v. U.S. Dep't of State*, No. 2:08-cv-1023, 2010 WL 3942723 at *4 (S.D.

---

[4] The constitutional right at stake in *Mandel* was a First Amendment right --- scholars and students of an academic invited to the United States claimed that the refusal of a waiver of a visa ineligibility ground adversely affected their First Amendment right to hear and meet Mandel in person.  *Id.* The *Mandel* Court was satisfied that the reason given for the waiver denial was "facially legitimate and bona fide," and the Court's inquiry ended there:  "the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."  *Id.* at 770.  The Court further explained that when an alien is excluded from the United States on the basis of the Executive's refusal to exercise its discretionary authority to waive applicable grounds of inadmissibility, "the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."  *Id.* at 770.

Ohio Oct. 6, 2010); *Gogilashvili v. Holder*, No. 11-CV-01502 (RRM), 2012 WL 2394820, *3 (E.D.N.Y. June 25, 2012).

The Supreme Court's recent decision in *Kerry v. Din*, 135 S. Ct. 2128 (2015) reaffirmed this body of case law.[5]  In *Din*, the Supreme Court found that a consular officer satisfied any due process rights a U.S. citizen may have in her spouse's visa applications when the consular officer informed the visa applicant that he was inadmissible by citing to a broad statutory provision, 8 U.S.C. § 1182(a)(3)(B), the terrorist activities bar to admissibility, without providing a more specific subsection or factual allegations.  *Id.* at 2140-41.

---

[5]  Congress has repeatedly acknowledged the consular nonreviewability doctrine and chosen to leave it undisturbed.  When Congress drafted the INA in 1952, there were suggestions to authorize judicial review of visa denials or to create a semi-judicial board "with jurisdiction to review consular decisions pertaining to the granting or refusal of visas," H.R. Rep. No. 1365, 82d Cong., 2d Sess. 36 (1952) (House Report); *see* S. Rep. No. 1515, 81st Cong., 2d Sess. 622 (1950).  But Congress declined to enact any such procedure.  Then in 1961, when the INA was amended to authorize judicial review of determinations affecting aliens in the United States subject to deportation or exclusion proceedings, Congress provided no corresponding right to judicial review for aliens outside the United States claiming some right to enter.  *See* Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 651.  As recently as 2002, Congress made clear that the Homeland Security Amendments did not create a "private right of action to challenge a decision of a consular officer or other United States official or employee to grant or deny a visa."  Homeland Security Act of 2002, Pub. L. No. 107-296, § 428(b), (e), and (f), 116 Stat. 2187-2190.  And Congress has failed to enact numerous bills proposing to establish a board within the Department of State to review consular officers' visa decisions.  *See*, *e.g.*, H.R. 3305, 103d Cong., 1st Sess. (1993); H.R. 2975, 104th Cong., 2d Sess. (1996); H.R. 4539, 105th Cong., 2d Sess. (1998); H.R. 1345, 107th Cong., 1st Sess. (2001).

Justice Kennedy, writing in the narrowest and controlling opinion,[6] stated, "Under *Mandel*, respect for the political branches' broad power over the creation and administration of the immigration system extends to determinations of how much information the Government is obliged to disclose about a consular officer's denial of a visa to an alien abroad." *Din*, 135 S. Ct. at 2141 (Kennedy, J., concurring opinion). Thus, "the Government satisfied any obligation it might have had to provide Din with a facially legitimate and bona fide reason for its action when it provided notice that her husband was denied admission" under a valid statutory ground of inadmissibility." *Id*.[7]

With respect to the issue of standing, a non-resident unadmitted alien has "no constitutional right of entry to this country." *See Mandel*, 408 U.S. at 762; *Hazama*, 851 F.3d at 708 ("The Supreme Court has consistently recognized that

---

[6] Because neither the plurality nor the concurrence garnered a majority of the justices, "the holding of the Court may be viewed as that position taken by those members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotations and citations omitted). Justice Kennedy's concurrence is the narrowest ruling that a majority of the Court would support. This Court, therefore, is bound by Justice Kennedy's holding that citing the statutory basis for inadmissibility satisfies due process and that consular nonreviewability precludes any more searching inquiry. *See Din*, 135 S. Ct. at 2141. (Kennedy, J., concurring).

[7] Justice Scalia, writing for the plurality, explained that "to the extent that [Din] received any explanation for the Government's decision, this was more than the Due Process Clause required." 135 S. Ct. at 2138 (Scalia, J., plurality opinion).

7

unadmitted, nonresident aliens have no free-standing constitutional right to enter the United States"); *see, e.g., Ben-Issa v. Reagan*, 645 F. Supp. 1556, 1559 (W.D. Mich. 1986) ("It is beyond discussion . . . [that] an unadmitted and nonresident alien, has no constitutional right to enter the United Sates as an immigrant or otherwise"); *cf. United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned").

In *Din*, Justice Kennedy declined to decide whether a U.S. citizen had a marriage-based liberty interest in her spouse's visa application that would allow for even the limited judicial review discussed above. *Din*, 135 S. Ct. 2139 (Kennedy, J.). However, the better view, is that a U.S. citizen lacks standing to challenge a consular officer's refusal of a visa to his or her spouse. *See Din,* 135 S. Ct. at 2138 (Scalia, J., plurality opinion) ("Because Fauzia Din was not deprived of life, liberty, or property when the Government denied [her alien spouse] admission to the United States, there is no process due to her under the Constitution") (internal quotation marks omitted).[8]

---

[8]   A number of district courts that have analyzed this question have reached this result. *See, e.g., Ben-Issa*, 645 F. Supp. at 1559, 1562 (explaining that whatever interests a U.S. citizen has, "such interests are distinct from those of her husband who as an alien not within the borders of the U.S. has no constitutional interest"); *Singh v. Tillerson*, No. 16-922 (CKK), 2017 WL 4232552 at *5 (D.D.C. Sept. 21, 2017) (explaining that "while the Constitution protects an individual's right to

Justice Scalia's analysis is consistent with Sixth Circuit precedent.  *See Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006) ("A denial of an immediate relative visa does not infringe upon . . . [a couple's] right to marry"); *Almario v. Att'y Gen.*, 872 F.2d 147, 151 (6th Cir. 1989) ("[T]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in this country. . . Nor did Congress provide for this right by statute").  Although not expressly addressed by the Sixth Circuit, this reasoning applies even more strongly to an adult U.S. citizen son or daughter seeking judicial review of the denial of a visa.  *See, e.g.*, *Singh*, 2017 WL 4232552 at *5-6; *Gogilashvili*, 2012 WL 2394820 at *5 (applying this reasoning even in the context of a minor child); *cf. Butera v. District of Columbia*, 235 F.3d 637, 656 (D.C. Cir. 2001) (noting that a parent does not have a constitutionally protected liberty interest in the companionship of a child who is past minority and independent).

---

marry and the marital relationship, these constitutional rights are not implicated when a spouse is removed or denied entry to the United States"); *Gogilashvili*, 2012 WL 2394820 at *5 ("No constitutional right of a citizen spouse is violated by deportation or denial of a visa application of his or her alien spouse").  Defendants note that the Ninth Circuit Court of Appeals reached a contrary result in *Bustamante v. Mukasey*, 531 F.3d 1059, 1061 (9th Cir. 2008).

## ARGUMENT

**I.    The Amended Complaint does not provide any basis for looking behind the consular officer's determination that Mr. Latif is not eligible for a visa.**

In *Din*, the Supreme Court held that a consular officer satisfied any process that a plaintiff may have been entitled to, when the consular officer cited to a statutory basis for the visa denial, 8 U.S.C. § 1182(a)(3)(B), without providing a specific subsection or factual allegations. *Din*, 135 S. Ct. at 2141. This holding is fatal to Plaintiffs' claim for additional information regarding the consular officer's refusal of a visa to Mr. Latif.

As in *Din*, here, the consular officer determined that Mr. Latif was ineligible for the visa citing to 8 U.S.C. § 1182(a)(3)(B), the terrorist activities bar. Dkt. 13 at ¶ 13. The consular officer was not required to do more. *Din*, 135 S. Ct. at 2141. There simply is no legal basis for Plaintiffs to seek an order from the Court to "provide the reason or an explanation of Latif's inadmissibility determination at minimum in camera or in a summary." *See* Dkt. 19 at 33 ("Relief Requested"); *see also*, *id*. at ¶ 51 (allegation regarding Plaintiffs efforts to obtain additional information about the refusal); ¶ 131 (same).

It is irrelevant how Plaintiffs characterize their claims, the decision to withhold a visa is not subject to judicial review under the doctrine of consular nonreviewability. *See Bruno,* 197 F.3d at 1159; *Gogilashvili*, 2012 WL 2394820

at *3.  Plaintiffs cannot avoid the doctrine of consular nonreviewability by casting their claim as a challenge to how DOS interprets the law or makes eligibility determinations.  *See e.g.*, *Lihua Xu*, 2010 WL 3942723 at *4 (holding that "Plaintiffs cannot circumvent the doctrine of consular nonreviewability by arguing that they are challenging Defendants' interpretation . . . rather than the ultimate decision to deny . . . [a] visa application"); *Garcia v. Baker*, 765 F. Supp. 426, 428 (N.D. Ill. 1990) (rejecting an attempt by plaintiffs "to avoid the consular nonreviewability doctrine by maintaining that they are . . . challenging the State Department's legal opinion").

It simply does not matter whether Plaintiffs characterize their claims as a constitutional violation (Counts 1, 2, 3, 4, 5, 9, 10), a violation of the INA (Counts 6, 7), or a violation of the APA (Count 8).  However Plaintiffs cast their claims, once a consular officer provides a "facially legitimate and bona fide reason" for the officer's determination of ineligibility, "courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against" the constitutional interests of citizens the visa denial might implicate.  *Din*, 135 S. Ct. at 2140-41 citing *Mandel*, 408 U.S. at 770.  The Supreme Court has already found that the citation to 8 U.S.C. § 1182(a)(3)(B) is such a legitimate and bona fide reason.  *See id*. at 2141.  There is no requirement that the Government point to a more specific

subsection within 8 U.S.C. § 1182(a)(3)(B), *see* Dkt. 19 at ¶ 8, or to explain how the ineligibility determination was made. *Id*.[9]

In sum, a consular officer is not required to divulge the reasoning behind a decision or the information supporting it. *Id*. at 2141; *Mandel*, 408 U.S. at 770. As a result, Plaintiffs' claims should be dismissed in their entirety.

## II.    Plaintiffs failed to make any showing of bad faith.

Once the consular officer provides a facially legitimate reason for the visa refusal (i.e. a citation to a statutory ground of inadmissibility), the plaintiff has the burden of proving that the reason was not "bona fide" by making an "affirmative showing of bad faith on the part of the consular officer who denied [] a visa" that is "plausibly alleged with sufficient particularity." *Din*, 135 S. Ct. at 2141. Absent that affirmative showing, courts are "not to 'look behind' the Government's"

---

[9]  Plaintiff allege that by placing Mr. Latif in the "category" of 8 U.S.C. § 1182(a)(3)(B) "on the basis of undisclosed information without informing him of such designation, the basis for the designation, or providing an independent forum in which" he might "secure the removal of this designation" violates his purported Due Process rights under the Fifth Amendment. *See* Dkt. 19 at ¶ 86 and Count 3 generally. For the reasons set forth above, this claim is precluded by *Din*. In addition to the extent Plaintiffs' challenges go beyond the denial of the visa, an applicant for admission to the United States has the burden of establishing admissibility under U.S. immigration laws. *See* 8 C.F.R. § 235.1(f). Therefore, it is the alien's burden to establish that none of the grounds of inadmissibility apply, and it makes no sense to argue that an alien was not on notice that it is his burden to establish admissibility.

decision.  *Id*.; *see, e.g., Lihua Xu*, 2010 WL 3942723 at *3-4 (dismissing for lack of subject matter jurisdiction).

Here, Plaintiffs have failed to allege any facts showing that the consular officer refused the immigrant visa in bad faith.  *See Din*, 135 S. Ct. at 2141; *Singh*, 2017 WL 4232552 at *6-7 (finding that a complaint lacks any facts that might plausibly suggest that the visa refusal was in bad faith).  Plaintiffs do allege in a conclusory manner that the Government violated Plaintiffs' First and Fifth Amendment rights by allegedly making various determinations on the basis of Plaintiffs' "religious beliefs or appearance of a certain religious  belief" and/or national origin.  *See* Dkt. 19 at ¶¶ 68-69, 71, 77; *see also*, Counts 1 and 2 generally.[10]  But they allege no facts to support these legal conclusions.[11]  For

---

[10] Plaintiffs also state "the decision is made without even presenting evidence . . . to ensure that the executive branch is not operating unchecked on the basis of erroneous or nonexistent evidence, or in bad faith." Dkt. 19 at ¶ 8.  Again, this allegation does not constitute an affirmative showing of bad faith "plausibly alleged with sufficient particularity."  *Din*, 135 S. Ct. at 2141.

[11] For example, Counts 1 and 2 do nothing more than speculate, without any supporting facts, that Defendants took actions solely on the basis of Plaintiffs' "imputed religious beliefs" and/or national origin.  Count 3 does not include any allegations amounting to a violation of law, and instead includes a conclusory statement that Plaintiffs' due process rights were violated because Plaintiff Latif was not informed of the "basis for his inadmissibility" or information the Government may have maintained in TECS before he was notified of the denial of his visa, an argument that, as explained in greater detail throughout the brief, does not demonstrate a violation of law.  Count 4 alleges that the Plaintiffs are "unable to travel internationally because of the TECS designations" but no facts are presented that state that any of the Plaintiffs is unable to travel and it is uncontested

example, there are no facts alleged to show that any agency actions were undertaken because of Plaintiffs' religious beliefs, and Plaintiffs fail to introduce any plausible comparison to similarly situated groups.

In sum, the consular officer's citation to 8 U.S.C. § 1182(a)(3)(B) is a facially legitimate and bona fide reason for denying the visa to Mr. Latif. *See Din*, 135 S. Ct. at 2140. Because Plaintiff does not dispute that the consular officer cited a statutory basis of ineligibility in refusing to issue Mr. Latif an immigrant visa (8 U.S.C. § 1182(a)(3)(B)), *see* Dkt. 19 at ¶ 50, the doctrine of consular non-reviewability precludes any further judicial review and the Court should dismiss the Amended Complaint.

---

that Plaintiff Latif's inability to travel to the United States is based on the visa denial. Count 5 fails for the reasons identified in Section V of this brief. Counts 6 and 7 fail to provide any facts in support of the alleged violations of the INA and, the Government's facially legitimate identification of a specific ground of inadmissibility demonstrates compliance with the INA. Count 8 is addressed in Section VI of this Brief. Count 9 does not include any factual allegations and erroneously states that Plaintiffs have a right to view the information the consular officer relied upon in denying Plaintiff Latif's visa, which is contrary to the clear holding of *Din*. Count 10 is an attempt to recast the challenge to the visa denial as something else and includes allegations that Plaintiff Latif "is legally barred from traveling to or from the United States, which he would do had he not been subjected to the inadmissibility and TECS designation." It is uncontested that Plaintiff Latif's visa was denied and it is as a result of that denial that he cannot travel to the United States. Count 10 is simply an attempt to circumvent the doctrine of consular nonreviewability by framing the allegation as a challenge to the determination of inadmissibility and the "TECS designation."

### III.   None of the Plaintiffs have standing to challenge a consular officer's refusal of a visa.

There is an additional problem with Plaintiffs' Amended Complaint:  none of the Plaintiffs have standing.  Specifically, as an unadmitted, nonresident alien, Mr. Latif has no constitutional right to enter the country.  *See Mandel*, 408 U.S. at 762; *see, e.g., Ben-Issa*, 645 F. Supp. at 1559 ("It is beyond discussion . . . [that] an unadmitted and nonresident alien, has no constitutional right to enter the United States . . .").  While the Due Process Clause protects aliens "physically present" in the United States, *see Bangura*, 434 F.3d at 496, Mr. Latif is not physically present in the United States.  Thus, Mr. Latif's claim that the Government violated his rights by not allowing him to enter the United States necessarily fails.[12]

---

[12]  It is for this reason that Plaintiffs' Substantive Due Process claims (Counts 4 and 10) must be dismissed as a matter of law.  There is an additional specific problem with Count 4 alleging a Substantive Due Process violation of the Fifth Amendment for infringing on Plaintiffs' ability to travel:  Plaintiffs fail to allege any facts indicating that the Government actually infringed on their purported right to travel.  Plaintiffs do not plausibly allege that Mr. Latif, and his family, are unable to travel throughout the world; Mr. Latif is simply not permitted to enter the United States because he is not eligible for a visa under U.S. law.  *See Bangura*, 434 F.3d at 496. The Due Process Clause is not implicated by a visa denial because such a denial does not void a litigant's relationship with his family or prevent him from living with his family anywhere in the world besides the United States.  *See Singh*, 2017 WL 4232552 at *5.

Moreover, even in the context of claims by U.S. citizens, the Supreme Court has distinguished between "the *freedom* to travel outside the United States . . . from the *right* to travel within the United States . . ."  *Haig v. Agee*, 453 U.S. 280, 306 (1981) (emphasis original).  And the Sixth Circuit has recently affirmed dismissal

In addition, neither Dr. Amiri[13] nor their adult son have standing to challenge a visa refusal based on their relationship to Mr. Latif. *See Din,* 135 S. Ct. at 2138 (Scalia, J., plurality opinion); *see, e.g.*, *Ben-Issa*, 645 F. Supp. at 1559, 1562; *Singh*, 2017 WL 4232552 at *5-6 (holding that denials of visas did not implicate a liberty interest protected by the Fifth Amendment); *cf. Bangura*, 434 F.3d at 496 (holding that the denial of an immediate relative visa does not infringe upon the right to marry). For these reasons, none of the Plaintiffs have standing.

### IV.   There is an additional reason why Plaintiff has failed to state a under the APA (Count 8):  the final agency action rule.

Under the APA, a plaintiff may only challenge a final agency action. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see, e.g., Bangura*, 434 F.3d 500-1. As a general matter, two conditions must be satisfied for agency action to be final:

> First, the action must mark the consummation of the agency's decisionmaking process . . . [rather than be] merely tentative or interlocutory

---

of a lawsuit by a U.S. citizen challenging his inclusion on a list for enhanced screening at an airport. *See Beydoun v. Sessions*, 871 F.3d 459, 468 (6th Cir. 2017); *see also*, *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 535 (6th Cir. 2007) (holding that allegations of travel delays do not amount to a deprivation of a U.S. citizen's right to travel); *Green v. Transp. Sec. Admin*., 351 F. Supp. 119, 130 (W.D. Wash. 2005) (holding that "plaintiffs do not have a right to travel without any impediments whatsoever").

[13]  To be clear, Dr. Amiri is not a U.S. citizen.  Thus, even if a U.S. citizen spouse has standing to challenge a visa refusal (which is contrary to the weight of authority in the Sixth Circuit), it is unclear whether Dr. Amiri would have standing to challenge the refusal.  However, there is no need for this Court to decide this issue today.

nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow.

*Bennett*, 520 U.S. at 177-78 (quotations and citations omitted).

Here, the only final agency action challenged is the refusal of a visa to Mr. Latif by a consular officer (a claim that is barred by the doctrine of consular nonreviewability for the reasons previously discussed).  For this additional reason, Plaintiffs failed to state a claim under the APA.  *See Bennett,* 520 U.S. at 177-78.

**V.   There are additional reasons why Plaintiff fail to state a claim under the First, Fifth, or Sixth Amendments (Counts 1, 2, 3, and 9).**

Plaintiffs allege in a conclusory manner that the Government maintains records on Mr. Latif in governmental databases and that, among other things, this violated his purported First, Fifth, and Sixth Amendment rights.  *See* Dkt. 19 at ¶¶ 72-73, 77, 82, 85, 130, 131.  Aside from making conclusory statements about "the TECS designation" that was placed, Plaintiffs never explain what they mean by this and Plaintiffs fail to offer any concrete facts that plausibly suggest a violation of the law.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (explaining the complaint must contain sufficient factual matter, accepted as true, to "state a claim that is plausible on its face"); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that plausibility requires "more than a sheer possibility that a defendant has acted unlawfully").

Specifically, the Equal Protection Clause of the Fifth Amendment prohibits the Government from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  In order to state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff disparately as compared to similarly situated persons.  *See Center for Bio-Ethical Reform, Inc. v. Napolitano,* 648 F.3d 365, 379 (6th Cir. 2011) ("[T]he allegations contained in the Amended Complaint as to disparate treatment amount to conclusory and unadorned assertions that, consequently, are not well-pleaded, and not entitled to a presumption of truth at this stage in the litigation."); *see, e.g., Alger Bible Baptist Church ("ABBC") v. Township of Moffatt*, No. 13-13637, 2014 WL 462354 at *7 (E.D. Mich. Feb. 5, 2014) (dismissing complaint because plaintiff failed to plead sufficient facts to raise the inference that its rezoning request was treated differently than similarly-situated requests).

To prevail on a procedural due process claim, a party must establish three elements:  (1) that the party possesses a protected interest in life, liberty, or property, (2) that the state deprived the party of this interest; and (3) that the state "did not afford [him] adequate procedural rights before depriving [him] or [his] protected interest."  *Wedgewood Ltd. P'ship of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).  Only after a plaintiff has met the burden of demonstrating that he possessed a protected property or liberty interest will the Court consider whether

the process violated his constitutional rights under the Fifth Amendment. *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005).

To establish a violation of the Free Exercise Clause of the First Amendment, a plaintiff must show an unconstitutional burden consisting of compulsion either to do an act that violated the plaintiff's religious convictions or communicate an acceptance of a particular idea or affirm a belief. *See Mozert v. Hawkins Cty. Bd. of Educ.*, 827 F.2d 1058, 1065 (6th Cir. 1987); *see, e.g., Nikolao v. Lyon*, 238 F. Supp. 3d 964, 975 (E.D. Mich. 2017) (dismissing First Amendment claims).[14]

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *See Crawford v. Washington*, 541 U.S. 36, 42 (2004).

Because Plaintiffs' claims regarding the First, Fifth, and Sixth Amendment are wholly conclusory and are not supported by any factual allegations, they necessarily fail. *See Center for Bio-Ethical Reform,* 648 F.3d at 379. For example, nowhere in the Amended Complaint do Plaintiffs allege that the Government has discriminated on the basis of religion by only maintaining records regarding

---

[14] A challenge will fail to state a claim under the Establishment Clause if the statute (1) has a secular purpose, (2) does not have the principal or primary effect of advancing or inhibiting religion, and (3) does not foster excessive government entanglement. *Lemon v. Kurtzman,* 403 U.S. 602, 612–13 (1971); *see, e.g., Harkness v. Secretary of Navy*, 858 F.3d 437, 447 (6th Cir. 2017) (affirming dismissal of Establishment Clause challenge).

individuals that belong to a particular faith.  Nor do any of the Plaintiffs allege that

they were compelled to do an act or communicate an acceptance of a particular

idea or affirm a belief.  *See Mozert,* 827 F.2d at 1065.  Without more, Plaintiffs

cannot maintain a claim under either the First or Fifth Amendments.  *See, e.g.,*

*ABBC*, 2014 WL 462354 at * 7.[15]  In fact, it is very unclear what purported injury

---

[15] It is possible that Mr. Latif and Dr. Amiri are asserting a Due Process claim for a
deprivation of a purportedly constitutionally protected interest in their reputations
and their adult son is asserting a claim for "emotional stress" on some basis that
may or may not be connected to the alleged harm to his parents' reputation.  *See*
Dkt. 19 at ¶¶ 95-97.  As a threshold matter, it is unclear how Mr. Latif, an
unadmitted, foreign national has standing to assert any Due Process claim.
Assuming *arguendo* that he has standing, both Mr. Latif and Dr. Amiri fail to state
a claim under the "stigma-plus" standard to determine whether alleged reputational
harm infringes upon a liberty interest or property interest.  *See Doe v. Michigan
Dep't of State Police*, 490 F.3d 491, 501-2 (6th Cir. 2007) citing *Paul v. Davis*, 424
U.S. 693, 711 (1976).  This test requires the plaintiff alleging reputational harm to
demonstrate:  (1) he suffered a stigma from governmental action, plus (2) he
experienced an alteration or extinguishment of a right or status previously
recognized by law.  *Paul*, 42 U.S. at 711.  Mr. Latif and Dr. Amiri's potential
claim fails because they do not allege any facts showing stigmatization.  For
example, they do not allege that any government agency publicly disclosed his
alleged placement in TECS.  *See Tarhuni v. Holder*, 8 F. Supp. 3d 1253, 1275 (D.
Or. 2014) (holding that an instruction to an airline not to permit boarding does "not
constitute dissemination of the stigmatizing information in such a way as to reach
the community at large"); *see also, Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir.
1991) (no public disclosure when statements not disseminated beyond proper chain
of command); *cf. United States v. Hartwell*, 436 F.3d 174, 180 (3d Cir. 2006)
(explain that because every air passenger is subjected to a search, there is virtually
no stigma attached to being subjected to search at a known, designated airport
search).  Furthermore, it is unclear under what legal theory Farbod Latif could
recover damages for "emotional distress."

Dr. Amiri and Farbod Latif are even seeking to redress in this lawsuit.  Moreover,

Plaintiffs' Sixth Amendment claim does not make any sense because Mr. Latif is

not a defendant in a criminal prosecution.  *See Musta v. U.S. Dep't of Justice*, 179

F.3d 1017, 1022 n.6 (6th Cir. 1999) (explaining that the Sixth Amendment does

not apply to civil proceedings); *Barker v. State of Ohio*, 330 F.2d 594, 594 (6th

Cir. 1964) (same).

Lastly, it is simply illogical to argue that the Constitution forbids the

Government from maintaining records about individuals in governmental

databases.  *See Beydoun,* 871 F.3d at 468 (affirming dismissal of a claim

challenging the inclusion of a U.S. citizen on a governmental list).  Plaintiffs

concede that U.S. Customs and Border Protection is responsible for maintaining

and, at times, authoring the contents of individuals' records in TECS, which

includes, among other things, information about the inspection and admission of

persons arriving at U.S. international ports of entry.  *Id*. at ¶ 18.[16]

---

[16]    Plaintiffs specifically object to the Government maintaining information about
Mr. Latif in the TECS database.  *See* Dkt. 19 at ¶¶ 18, 68-69, 77, 82, 85.  But
Plaintiffs present no argument as to why the Government is not permitted to
maintain information in this type of database.  As identified in the publicly
available System of Records Notice published in the Federal Register, information
is maintained in TECS "to track individuals who have violated or are suspected of
violating a law or regulation that is enforced or administered by CBP, to provide a
record of any inspections conducted at the border by CBP, to determine
admissibility into the United States, and to record information regarding
individuals, firms, and organizations to whom DHS/CBP has issued detentions and

Plaintiffs further allege that, as a general matter, the Federal Bureau of Investigation, the National Security Agency, and the Office of the Director of National Intelligence, collect information and then maintain that information in databases. *Id*. at ¶¶ 19, 20, 22. But Plaintiffs fail to allege any facts to connect these general allegations to Mr. Latif or any of his constitutional claims. Nor have they provided any argument as to why these agencies would not be permitted to collect information or maintain information in computer databases as opposed to some other format.

In sum, Plaintiff have failed to plausibly allege that the Government's maintaining records on foreign nationals, without more, is a violation of any constitutional right or supports any other type of claim. *See Center for Bio-Ethical Reform,* 648 F.3d at 379.

---

warnings." 73 Fed. Reg. 77778 (Dec. 19, 2008). Plaintiffs specifically state that they have traveled internationally and crossed the border (and therefore were the subject of inspections conducted at the border) numerous times, and Plaintiffs offer no argument as to why the Government is not permitted to maintain records related to an individual's attempt to enter the country or about an immigration order that was entered against a foreign national or about any of the other matters that are described in the publicly available System of Record Notice.

## VI.   There are additional reasons why Plaintiffs fail to state a claim under the INA (Counts 6, 7).

Plaintiffs fail to allege that the Government violated a duty contained in any particular provision of the INA.  Instead, Plaintiffs allege that the Government is acting contrary to one of the purported goals of the INA:  to "best bring families together" to live together in the United States.  Dkt. 19 at ¶¶ 112, 117.  This is insufficient because Plaintiffs fail to identify any statutory provision that was allegedly violated and because the Sixth Circuit has already held that there is no right for one's alien spouse to live in the country.  *See Almario*, 872 F.2d at 496.[17]

## VII.   There are additional reasons why Plaintiffs fail to state a claim under Article I, Section 9 (Bill of Attainder) (Count 5).

There is an additional independent reason why Plaintiffs failed to state a claim for a violation of Article I, Section 9 (Bill of Attainder).  A bill of attainder is a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.  *See Zilich v. Longo*, 34 F.3d 359, 362 (6th Cir. 1994).  There are three essential elements to a bill of attainder, specificity, punishment, and lack of a judicial trial.  *Id*. (citations and quotations omitted).  The Bill of Attainder Clause is a "safeguard against legislative exercise of the judicial function, or more simply – trial by

---

[17] The Government does not read the Amended Complaint as raising any claim under the INA to the Government maintaining records regarding aliens.

legislature." *Song v. Elyria*, 985 F.2d 840, 844 (6th Cir. 1993); *cf. United States v. Lovett*, 328 U.S. 303, 315 (1946) ("A bill of attainder is a legislative act which inflicts punishment without a judicial trial").

Here, Plaintiffs' challenge is civil in nature and they fail to allege any legislative act. *See* Dkt. 19 at ¶¶ 98-103. Thus, necessarily, they have failed to state a claim that any legislative act constitutes a bill of attainder. *See Nixon v. Adm'r of Gen Servs.*, 433 U.S. 425, 470 (1977) (rejecting a broad definition of a bill of attainder, in part, because "every person or group made subject to legislation which he or it finds burdensome may subjectively feel, and complaint, that he or it is being subjected to unwarranted punishment").

## VIII. Plaintiffs fail to allege any legal basis for recovering monetary damages.

The Amended Complaint does not contain any legal basis for recovering monetary damages, withdrawing Plaintiffs' *Bivens* claims. Thus, they have failed to state a claim for damages.[18]

---

[18] It is true that the Federal Tort Claims Act ("FTCA") allows a person to sue the United States for damages. 28 U.S.C. § 1346(b). But a person cannot sue for damages unless the person has previously submitted a claim to the agency. *See McNeil v. United States*, 508 U.S. 106, 107, 112 (1993) (affirming dismissal where plaintiff filed suit before exhausting his administrative remedies). Further, the FTCA leaves the United States immune from lawsuits challenging officials' exercise of their "discretionary function." 28 U.S.C § 2680(a). That limitation "prevent[s] judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy." *United States v. Gaubert*, 499

**CONCLUSION**

For the foregoing reasons, this Court should dismiss this action.

Dated:  October 19, 2017                     Respectfully submitted,

CHAD A. READLER                          /s/ *Aaron Goldsmith*
Acting Assistant Attorney General        AARON S. GOLDSMITH
Civil Division                           Senior Litigation Counsel
                                         Office of Immigration Litigation
WILLIAM C. PEACHEY                       District Court Section
Director                                 U.S. Department of Justice
Office of Immigration Litigation         P.O. Box 868, Ben Franklin Station
District Court Section                   Washington, DC  20044
                                         Telephone:  (202) 532-4107
JEFFREY S. ROBINS                        Facsimile:  (202) 305-7000
Assistant Director                       Aaron.Goldsmith@usdoj.gov

---

U.S. 315, 322 (1991).  Thus, even if Plaintiffs had cited the FTCA, any claim for monetary damages would still need to be dismissed.

## CERTIFICATION OF SERVICE

I hereby certify that on October 19, 2017, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system, which will provide

electronic notice and an electronic link to this document to the attorneys of record.

By:  */s/ Aaron Goldsmith*
AARON S. GOLDSMITH
Senior Litigation Counsel
United States Department of Justice
Civil Division

26