UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT, MICHIGAN

Loabat Amiri, et al.,
Plaintiffs,                                         Case No. 17-cv-12188

v.

Hon. Thomas L. Ludington
Mag. Judge Patricia T. Morris

Department of Homeland Security, et al.,

Defendants.

_____/


**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' COMPLAINT**


Plaintiffs, Loabat Amiri, Mohamed Amin Latif, and Farbod Latif, by and

through their undersigned counsel, and for their Response to Defendants' Motion

to Dismiss Plaintiffs' Complaint (Defendants' Motion to Dismiss) state as follows:


**WHEREFORE**, for the reasons discussed in the accompanying Brief,

Plaintiffs respectfully request this Honorable Court DENY Defendants' Motion,

and in turn award Plaintiffs their costs, attorneys' fees, and any other relief it

deems just and equitable in having to defend this instant motion.


Respectfully submitted:                          Dated: November 24, 2017

 s/Caridad Pastor Cardinale
Caridad Pastor Cardinale (P43551)
Pastor & Associates, P.C.
Attorneys for the Plaintiffs
525 E. Big Beaver Road Suite 206
Troy, Michigan 48083
(248) 619-0065
carrie@pastorandassociates.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT, MICHIGAN

Loabat Amiri, et al.,
Plaintiffs,                                             Case No. 17-cv-12188

v.

                                                        Hon. Thomas L. Ludington
                                                        Mag. Judge Patricia T. Morris

Department of Homeland Security, et al.,

Defendants.

_____/

**BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

The Defendants' Motion to Dismiss should be denied because the Defendants

have erroneously argued that this is a case involving the doctrine of consular

nonreviewability.  The Defendants are attempting to narrow the scope of this case

by pointing to the doctrine of consular nonreviewability when in fact this case

involves many more legal issues including the review of agency actions.

## STATEMENT OF ISSUES PRESENTED

May a district court second-guess a consular officer's determination to refuse a visa for terrorist activities in the absence of specific factual allegations of bad faith by the consular officer?

PLAINTIFFS RESPONSE:  This is not the issue in this case because the Plaintiffs are not asking the court to second guess a consular officer's determinations but rather to review constitutional violations and unlawful agencies actions.

## MOST CONTROLLING AUTHORITY

Immigration and Nationality Act of 1952

# TABLE OF CONTENTS

I.     STATEMENT OF MATERIAL FACTS                          1
II.    MOTION TO DISMISS STANDARD OF REVIEW                 2
III.   ARGUMENT
       1. The doctrine of consular nonreviewability is not
          applicable to this case because the consular officer,
          alone, did not make  the inadmissibility determination
          and deny the visa.                                4

       2. The Defendants have refused to provide the basis for
          the inadmissibility decision so that the Plaintiffs can
          request an exemption which is available under statute    11

       3. The Defendants have acted in bad faith towards the
          Plaintiffs.                                      14

       4. The Plaintiffs have standing in this matter.      16
       5. The Plaintiffs have stated a claim under the U.S.
          Constitution and the various statutes.            20

IV.    CONCLUSION                                           22

V.     CERTIFICATE OF SERVICE                               23

i

# INDEX OF AUTHORITIES

<u>CASES</u>

*Abdullah v. I.N.S.,* 921 F. Supp. 1080 (SDNY 1996)    15

*Abourezk v. Reagan,* 592 F. sup. 880 (D.D.C. 1984)    9

*Almario v. Att'y Gen.* 872 F.3d 147 (6th Cir. 1989)    9

*Am.Acad. of Religion v. Napolitano,* 573 F.3d 115 (2nd Cir. 2009)    8,12

*Bangura v. Hansen,* 434 F.3d 487 (6th Cir. 1989)    9

*Ben Issa v. Reagan,* 645 F. Supp. 1556(W.D. Mich 1986)    9

*Board of Trustees v. City of Painesville,* 200 F.3d 396(6th Cir. 1999)    3

*Bustamante v. Mukasey,* 531 F.3d 1059 (9th Cir. 2008)    8,9

*Cardenas v. United States,* 826 F.3d 1164 (9th Cir. 2016)    10

*Cherri v. Mueller,* 951 F. Supp. 2d 918 (E.D.Mi 2013)    16

*Cleveland Bd. Of Educ. v. LaFleur,* 414 U.S. 632 (1974)    18

*Cleveland Bd. Of Educ. v. Loudermill,* 470 U.S. 532 (1985)    18

*Conley v. Gibson,* 355 U.S. 41 (1957)    2

*Garcia v. Baker,* 765 F. Supp. 426 (N.D. Ill. 1990)    9

*Gegiow v. Uhl,* 239 U.S. 3 (1915)    17

*Gentek Bldg. Prods.v.Sherwin-Williams Co.* 491 F.3d 320(6th Cir. 2007)    3

ii

*Hazama v. Tillerson,* 851 F.3d706 (7th Cir. 2017)                    10,11

*Kerry v. Din,* 135 S. Ct. (2015)                                     4,10,
                                                                      11,

*Kerry v. Din*, 135 S. Ct. (2015) (Amicus Brief of Former Cons.Officers)   6

*Lewis v. ABC Bus. Serv.,Inc.,*135 F.3d 389(6th Cir. 1998)            2

*Lihua Xi V. United States Department of State,* No. 2:08-cv-1023
1020 WL 3942723 (S.D. Ohio Oct. 6, 2010)                             7

*Mandel v. Kleindienst, 408 U.S. 753 (1972)*                          *8,9*

*Michigan Southern R.R. Co. v. Branch & St. Joseph Counties
Rail Users Ass'n, Inc.* 287 F.3d 568 (6th Cir. 2002)                  3

*Moore v. Ferrellgas, Inc.,* 533 F. Supp.2d 740(W.D.Mich 2008)        3

*Musson Theatrical Inc. v. Federal Express Corp.*
89 F.3d 1244 (6th Cir. 1996)                                         3

*O'Bryan v. Holy See,* 556 F.3d 361 (6th Cir. 2009)                   2-3

*Olsen v. Albright,* 990 F. Supp. 31 (D.D.C. 1997)                    14,15

*Patel v. I.N.S.,* 811 F. 2d 377 (7th Cir. 1987)                      15

*Saavedra Bruno v. Mukasey,* 197 F.3d 1153 (D.D.Cir. 1999)            9

*Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037 (6th Cir. 1991)       2

*Singh v. Tillerson,* No. 16-922 (CKK)2017 WL 4232442
(D.D.C. Sept.21, 2017)                                               9

iii

*Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit,* 738 F.2d 163 (6th Cir. 1984) — 3

*United States v. SCRAP,* 412 U.S. 669 (1973) — 17

*United States v. Slocum,* 464 F.2d 1180 (3rd Cir. 1972) — 15

*Westlake v. Lucas,* 537 F.3d 857 (6th Cir. 1976) — 2

*Windsor v. The Tennessean*, 719 F.2d 155 (6th Cir. 1983) — 2

STATUTES

5 U.S.C.§702 — 19

5 U.S.C.§706 — 7

6 U.S.C.§236(b)(1) — 5

8 U.S.C.§1151(b)(2)(A)(i) — 19

Homeland Security Act of 2002 §428 Pub.L.No.107-296(Nov.25,2002) — 4,5

Immigration and Nationality Act of 1952 §203(d) — 19

Immigration and Nationality Act of 1952 §212(a)(3)(B) — 1,4,5, 6,7,9 10, 11 12,13 19

Immigration and Nationality Act of 1952 §212(a)(3)(B)(iv)(VI) — 12

Immigration and Nationality Act of 1952 §212(d)(3)(B) — 14

iv

<u>FEDERAL RULES</u>

Fed.R.Civ.Pro 12(b)(1)                                              3

Fed.R.Civ.Pro 12(b)(6)                                              2

v

I.     **STATEMENT OF MATERIAL FACTS**

Plaintiff Mohammad Amin Latif (Latif) is a citizen of Great Britain. Dkt. 19 at ¶ 27. Plaintiff Loabat Amiri (Amiri) is a lawful permanent resident of the U.S.  Dkt. 19 at ¶ 48. Plaintiff Farbod Latif (Farbod) is a U.S. citizen.  Dkt. 19 at ¶ 27.  Plaintiff Latif was interviewed at the U.S. Consulate in London on his derivative immigrant visa.  Dkt. 19 at ¶ 50. Years afterwards and after numerous requests and the filing of a mandamus action in this District, the U.S. Embassy in London issued a letter stating that Latif been found ineligible to receive an immigrant visa under INA§ 212(a) (3)(B) of the INA.  Dkt.19 at ¶ 50.

Plaintiff Amiri discovered that she received a TECS designation the same date that Plaintiff Latif received the same, five days prior to Latif appearing at the border to request a parole into the U.S.  Dkt. 19 at ¶ 43.

The Plaintiffs do not know which agency made the determination nor why these determinations and TEC entries were made and have been refused requests for more information on the determination.  Dkt. 19 at ¶ 51.

1

## II.   MOTION TO DISMISS STANDARD OF REVIEW

The standard of review in a motion to dismiss pursuant to Fed.R.Civ.Pro 12(b)(6) for failure to state a claim requires a court to review the complaint accepting all of the factual allegations in the complaint as true, and construing them in a light most favorable to the plaintiff. *Windsor v. The Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983); *Westlake v. Lucas*, 537 F2d. 857, 858 (6th Cir. 1976).

Further, any conflicting interpretations of facts must be construed in the plaintiff's favor. *Sinay v. Lamson & Sessions Co*., 948 F.2d 1037, 1039-40 (6th Cir. 1991). As such, in deciding to grant a motion to dismiss for failure to state a claim, the Supreme Court has stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); see also *Lewis v. ABC Bus. Serv., Inc*., 135 F3d 389, 405 (6th Cir. 1998).

A Motion to Dismiss pursuant to Rule 12(b) (1) includes two types of attacks: facial attacks and factual attacks. *O'Bryan v. Holy See*, 556 F.3d 361, 375 (6th Cir. 2009); *Gentek Bldg. Prods. v. Sherwin-Williams Co*., 491 F.3d

2

320, 330 (6th Cir. 2007).  When a Rule 12(b)(1) motion attacks the plaintiff's claim of subject matter jurisdiction on its face, the facts are not in dispute and the allegations of fact in the complaint are generally considered as true. The plaintiff's burden to establish subject matter jurisdiction is not onerous. *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996). When there is a facial attack, the plaintiff can survive a Rule 12(b) (1) motion to dismiss by showing that the complaint alleges a claim cognizable under federal law and the claim is "substantial." A claim is substantial unless prior court decisions inescapably render it frivolous. *Michigan Southern R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002); *Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit*, 738 F.2d 163, 165 (6th Cir. 1984). A plaintiff can survive a facial attack by showing any arguable basis in the law for his claims. *Board of Trustees v. City of Painesville*, 200 F.3d 396, 398 (6th Cir. 1999); *Moore v. Ferrellgas, Inc.*, 533 F. Supp.2d 740, 744 (W.D. Mich. 2008).

3

### III.    ARGUMENT

1. <u>The doctrine of consular nonreviewability is not applicable to this case because a consular officer, alone, did not make the inadmissibility determination and deny the visa.</u>

Despite Defendants allegations to the contrary, this is not a case of consular nonreviewability - it is much more complex.  The Defendants attempt to argue that under *Kerry v. Din,* 135 S.Ct. 2128 (2015), the consular officer's determination of inadmissibility is sufficient and no further inquiry is required.  The Defendants reliance on *Kerry v. Din* is misplaced.   A determination of inadmissibility based INA§212(a) (3) (B) is not made by a consular officer or the U.S. Department of State (DOS).  With the enactment of the Homeland Security Act of 2002 (HSA) §428, Congress delegated ultimate authority over the functions of consular officers and authority over most visa refusals to the Secretary of the Department of Homeland Security (DHS). *Pub. L. No. 107-296*, 116 Stat. 2135 (Nov. 25, 2002).   The HSA provided that "all authorities to . . . administer, and enforce the provisions of [the Immigration and Nationality] Act and of all other immigration and nationality laws, relating to the functions of consular officers of the United

States in connection with the granting or refusal of visas" are now "vested exclusively" with the Secretary of Homeland Security, 6 U.S.C. § 236(b) (1). In fact, the DHS is almost exclusively in control of visa matters with a few exceptions and then DOS must consult with the DHS. *See, National Immigration Project of the National Lawyers Guild, Visa-Related Activity Chart (Jan. 6, 2015),*

*https://nationalimmigrationproject.org/PDFs/practitioners/practice_advisories/pr/visa-activities-chart.pdf*

The HSA mandates that DHS personnel be assigned to diplomatic posts. *See,* Homeland Security Act of 2002, P.L. 107-296, § 428(e), 116 Stat. 2135, 2189-90.     The U.S. Embassy in London has DHS personnel on site. *See, https://uk.usembassy.gov/embassy-consulates/government-agencies/dhs/ice/*

This is the U.S. Embassy where Plaintiff Latif was determined to be inadmissible and  denied an immigrant visa based on INA§212(a)(3)(B).

The information used in an INA§212(a) (3) (B) inadmissibility decision originates from databases or watch list information maintained by the Defendants DHS, the FBI, and other federal law enforcement and intelligence agencies.  This is information which consular officers cannot

5

evaluate or which is not available to them - the result of which renders the exercise of consular discretion meaningless. Thus, visa denials based on INA§212(a)(3)(B) frequently involve no consular investigation or discretion, but are compelled by a database entry—"known or suspected terrorist"—that consular officers are powerless to question, much less overrule.  Consular officers have no investigative role or authority to challenge information contained in databases and watch lists from other agencies. *See, Brief of Former Counselor Officers as Amicus Curiae in Support of Respondent*, *p.9 Kerry v. Din,* 135 S. Ct. 2128 (2015)    ("Amici were keenly aware during their service that questioning the national-security basis provided by other agencies for visa denials would not be well received either by those agencies or their own superiors in the Department of State")    When consular officers believe an inadmissibility determination might be in error, they can request a Security Advisory Opinion (SAO).  This procedure is outlined in the Memorandum of Understanding between the Secretary of DHS and DOS which indicates that  "[c]ases in which a third agency to which such a SAO request is referred believes that denial of a visa is appropriate and DOS believes the information is legally insufficient will be referred to the Secretary of Homeland Security to decide whether the facts support denial of

the visa in accordance with law." *Memorandum of Understanding Between the Secretaries of State and Homeland Security Concerning Implementation of Section 428 of the Homeland Security Act of 2002 at 7* (Sept. 28, 2003). Clearly the final decision about inadmissibility under INA§212(a) (3) (B) is made by DHS and not consular officers.  DHS actions as well as that of other agencies are reviewable by federal courts.  5 U.S.C. §706.

INA§212(a) (B)(3) visa denials are quite different than denials based on consular discretion (i.e. immigrant intent where an consular officer determines that the person intends to live permanently in the USA though applying for a temporary visa are denied under INA§214(b)).   In *Lihua Xu,* cited by the Defendants, the court held that the doctrine of consular reviewability deprived it of subject matter jurisdiction.  *Lihua Xi v. United States Department of State,* No. 2:08-cv-1023, 2010 WL 3942723 (S.D. Ohio Oct.6, 2010) The *Lihua Xu* case involved an untimely filed application and not an INA 212(a) (3) (B) visa denial.  In instances like late filed applications, the determinations are made by consular officers which is not the case here.

INA 212(a)(3)(B) visa denials bear no resemblance to the traditional exercise of consular discretion because the real decision-making in these

cases has in effect been ceded to the databases and watch listing process, in which government agents other than consular officers determine inadmissibility under INA§221(a)(3)(B).  Therefore, the doctrine of consular nonreviewability is not applicable to this case.

But even if the doctrine of consular nonreviewability applied in this case, constitutional challenges of the denial of visas are entitled to limited judicial review. The Defendants concede this limited judicial review in their Motion to Dismiss arguing that bad faith is required in order for a court to review a consular officer's decision. Dkt. 20 at 12.  The judicial review required in visa denials is limited to the reasons given for the adverse decision, unless the reasons are facially legitimate and bona fide. *Mandel v. Kleindienst ,* 408 U.S. 753, 770 (1972) "We hold that when the Executive exercises [the power to admit] negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant." *Mandel v. Kleindienst*, 408 U.S. at 770 *(emphasis added).*  A facially legitimate and bona fide visa decision is one in which there is a statutory basis for the decision and an absence of an allegation that the

8

consular officer did not in good faith believe the information he had before him/her. *Am. Acad. of Religion v. Napolitano*, 573 F.3d 115 (2nd Cir. 2009); *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 n.1 (9th Cir. 2008).  The cases which deal with the bona fide requirement, including the cases cited by the Defendants, all specifically state with some degree of specificity what are the grounds for the visa denials.  *See, Kerry v. Din, 135 S.Ct. 2128 (2015) (*Employment with the Taliban*); Mandel v. Kleindienst, 408 U.S. 753 (1972) (*prior visa violations*); Abourezk v. Reagan,* 592 F. Supp. 880, 888 (D.D.C. 1984) ("Abourezk I") (officials of hostile governments i.e. Cuba, etc.) *Bustamante v. Mukasey,* 531 F.3d 1059 (9th Cir. 2008) (drug trafficking); *Saavedra Bruno v. Albright,* 197 F 3d. 1153 (D.C.Cir. 1999) (drug trafficking); *Garcia v. Baker,* 765 F. Supp. 426 (N.D.Ill. 1990)(willful misrepresentation in prior visa application regarding intended length of stay); *Singh v. Tillerson,* No. 16-922 (CKK) 2017 WL 4232442 (D.D.C. Sept. 21, 2017) (misrepresentation of ages of children on visa applications). The other cases cited by the Defendants are either prior to the HSA in which consular officers exercised all visa decisions or deal with other statutes not involving the terrorism grounds of inadmissibility.  *Ben Issa v. Reagan,* 645 F. Supp. 1556 (W.D. Mich. 1986) (Prior to the enactment of the HSA

9

assigning INA 212(a) (3) (B) determinations to DHS); *Bangura v. Hansen,* 434 F.3d 487(6th Cir. 1989) (visa denial on marriage fraud basis and prior to HSA); *Almario v. Att'y Gen.,* 872 F.3d 147 (6th Cir. 1989) ( denial based on marriage fraud basis and prior to HSA).

In the case at bar, the Defendants have failed to provide a legally sufficient basis for the inadmissibility determination. The Plaintiffs do not know why Plaintiff Latif was denied a visa pursuant to INA§212(a) (3) (B) and why Plaintiff Amiri has a TECS designation.  A denial under the broad grounds of INA §212(a) (3) (B), without more or any specificity, cannot meet the facially legitimate and bona fide standard required under *Mandel* because the citation to an entire statute section fails to provide a challengeable factual basis.  Furthermore, a TECS designation is made by a federal agency (not consular officers).  Consular nonreviewability is inapplicable to Plaintiff Amiri's TECS designation.

Courts have held that if a visa denial affects the constitutional rights of American citizens, the denial may be reviewable. [1] *Cardenas v.  United States*, 826 F.3d 1164, 1169 (9th Cir. 2016); *Hazama v. Tillerson,* 851 F.3d 706 (7th Cir. 2017) see also *Din v. Kerry*, 135 S. Ct. at 2141–42 (dissenting

---

1 This rationale should be extended to permanent residents since the U.S. Constitution applies to all persons not just U.S. Citizens.  Zadvydas v. Davis, 533 U.S. 678, 693 (2001); see also Mathews v. Diaz, 426 U.S. 67, 77 (1976) holding that due process applies to all aliens in the United States, even those whose presence is "unlawful, involuntary, or transitory").

opinion of Breyer, J., joined by Ginsburg, Sotomayor, and Kagan, JJ.,

recognizing this right); *Id.* at 2139 (concurrence in judgment of Kennedy, J.,

joined by Alito, J., assuming arguendo that such a right exists).

The opinion in *Kerry v. Din* was not a majority opinion. *Kerry v. Din,*

135 S. Ct. 2128 (2015).   What *Kerry v. Din* does show is that a majority of

the Court is willing to allow some kind of review of consular officer visa

decisions. Both the concurring opinion of Justice Kennedy and the

dissenting opinion of Justice Breyer – representing six Justices in total —

reviewed the consular officer's visa denial in in order to issue their opinions.

Justice Kennedy's concurrence looked at the visa applicant's employment

with the Taliban to determine that the consular officer's decision had a

factual basis.  *Kerry v. Din,* 135 S. Ct. 2128 (2015) (Justice Kennedy

concurring opinion at 4).  Justice Breyer stated that a statement, permitting

an individual to understand why the government acted as it did, is a

fundamental element of due process. *Kerry v. Din*, 135 S. Ct. 2128 (2015)

(Justice Breyer dissenting opinion at 6)   Limited review is permitted in visa

denials even when made by a consular officer.  In *Hazama,* cited by the

Defendants, the court held that consular officers' decisions are reviewable

when there is no facially legitimate and bonafide reason for the denial.

11

*Hazama v. Tillerson,* 851 F.3d 706 (7th Cir. 2017) (visa denied to a member of the Palestinian Authority who threw rocks at Israeli soldiers). Therefore, even if the doctrine of consular nonreviewability applied, this Court has jurisdiction in this case.

  2. <u>The Defendants have refused to provide the basis for the</u>
    <u>inadmissibility decision so that the Plaintiffs can request an</u>
    <u>exemption which is available under the statute.</u>

  INA §212(a) (3) (B) includes a long list of acts including providing material support to a terrorist organization for which a person may be inadmissible. This INA section is limited by the fact that the support must be material and that knowledge is a requirement for the inadmissibility determination.  "INA §212(a) (3) (B) provides:

>   (VI)  to commit an act that the **actor knows, or reasonably should know, affords material support**, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological weapons), explosives, or training- (aa) for the commission of a terrorist activity; (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity; (cc) to a terrorist organization described in clause (vi)(I) or (vi)(II);  or (dd) to a terrorist organization described in clause (vi)(III), **unless the actor can demonstrate that he did not know, and should not reasonably have known,** that the act would further the organization's terrorist activity.

INA §  212(a)(3)(B)(iv)(VI), 8 U.S.C. §  1182(a)(3)(B)(iv)(VI). *(Emphasis Added)*

The knowledge requirement is essential and Congress intended for the person subjected to this ground of inadmissibility to have the opportunity to demonstrate that "he/she did not know or should not have reasonably known" that he/she was furthering terrorist activity.  Without knowing what information is being used to determine inadmissibility, the Plaintiffs have no way of demonstrating that they did not know and should not have reasonably known. *Am. Acad. of Religion v. Napolitano,* 573 F.3d 115 (2nd Cir. 2009) ("We conclude that the District Court had jurisdiction to consider the claim, despite the doctrine of consular nonreviewability; the statutory provision expanding visa ineligibility to those who contributed funds to an undesignated terrorist organization before the provision was enacted was validly applied to Ramadan; the knowledge requirement of the statute required the consular officer to find that Ramadan knew his contributions provided material support; and the consular officer was required to confront Ramadan with the allegation against him and afford him the subsequent opportunity to demonstrate by clear and convincing evidence that he did not know, and reasonably should not have known, that the recipient of his contributions was a terrorist organization")

In addition to the material and knowing requirements of visa denials and  decisions of inadmissibility grounds based on terrorism, the law provides for the ability of a person to request an exemption from the inadmissibility bar of INA §212(a)(3)(B).  The Secretaries of State and Homeland Security, in consultation with the Attorney General, can authorize exemptions from the terrorism-related inadmissibility grounds.  See INA §212(d) (3) (B).

In essence, the availability of an exemption constitutes Congressional intent to provide the applicant with a specific reason for the inadmissibility, otherwise the exemption would be useless.  Terrorism-related inadmissibility requires a more searching inquiry and access to the underlying reasons for the inadmissibility determination.

Meaningful redress for erroneous determinations of terrorism related inadmissibility grounds must include a basis to know and the ability to challenge the determination.  Meaningful access to the evidence used to make the determination before a neutral decision maker is warranted by due process.  The Defendant agencies actions in this case have unilaterally nullified that part of the law that provides for an exemption by refusing to provide the Plaintiffs with a rationale for the INA §212(d) (3) (B)

14

determination.

Likewise, Plaintiff Amiri is unable to challenge the TECS designation because she has no information regarding the contents of the TECS designation made by an unknown federal agency.


3.  <u>The Defendants have acted in bad faith towards the Plaintiffs.</u>

Profiling based on imputed religion and/or national origin is prohibited by the U.S. law and clearly shows bad faith.  This would not be the first time the Defendants have engaged in bad faith in the denial of visas. In *Olsen v. Albright,* a consular officer sued DOS for wrongful termination because he refused to follow the consulate's arbitrary, irrational and discriminatory visa refusal policies.  The consular officer was fired because he would not deny visas based on ethnicity or surname.  *Olsen v. Albright,* 990 F. Supp. 31 (D.D.C. 1997).  The Court in *Olsen* held that "The singling out of applicants for additional scrutiny based upon a discriminatory profile which is likely to increase the possibility of visa denial is sufficiently burdensome to cause a substantial injury to these groups." *Olsen v. Albright,* 990 F. Supp. At 38.  Other courts have also held that profiling is impermissible in deciding immigration benefits.  *Patel v. I.N.S.,* 811 F.2d

377, 382 (7th Cir. 1987); *United States v. Slocum,* 464 F.2d 1180,1184 (3rd

Cir. 1972)(profile used to identify possible airplane hijackers may not

discriminate against any group on the basis of religion, origin, political

views or race.) *Abdullah v. I.N.S.,* 921 F. Supp. 1080, 1093-94 (SDNY 1996)

(Immigration applications denied based on association with a particular

group violates our most basic principles.)

  Unfortunately, the Defendants do profile Muslims or those perceived

to be Muslims. *See, Jennie Pasquarella, Muslims Need Not Apply- How*

*USCIS Secretly Mandates the Discriminatory Delay and Denial of*

*Citizenship and Immigration Benefits to Aspiring Americans, ACLU SoCal,*

*Aug. 2013,*

*https://www.aclusocal.org/sites/default/files/field_documents/161849063-*

*muslims-need-not-apply-aclu-socal-report.pdf. ; Edward Cody, Travelers*

*with Muslims Names Find Themselves Fighting for U.S. Visa, Washington*

*Post Foreign Service, Apr. 1, 2010; Karen McVeigh, FBI Granted Power to*

*Delay Citizenship for Muslims, ACLU Report Says, The Guardian, Aug. 21,*

*2013; Deepa Iyer, Jayesh M. Rathod, 9/11 and the Transformation of U.S.*

*Immigration Law and Policy, ABA Human Rights Magazine Vol 38 No 1*

*(Winter 2011)*

The Plaintiffs in this case are victims of bad faith by the Defendants in that they have been profiled based on their national origin and imputed religious belief of Islam.  The Defendants' acts of profiling, as the Court in *Olsen* stated, has caused and continues to cause, the Plaintiffs substantial injury.

In *Cherri v. Mueller*, the court in the Eastern District of Michigan denied a Motion to Dismiss because it was premature to determine whether CBP had engaged in religious profiling. *Cherri v. Mueller*, 951 F. Supp. 2d 918 (E.D. Mi 2013)   Likewise in this case, the Motion to Dismiss should be denied as premature.  Therefore, the Motion to Dismiss should not be granted as the Plaintiffs have demonstrated that the Defendants do profile and that discovery in this case is necessary to show that the Defendants did in fact engage in bad faith in this instance.


4.  <u>The Plaintiffs have standing in this matter</u>

All the Plaintiffs in this case have standing in this matter.  This is not a case of consular nonreviewability despite the Defendants statements to the contrary.  All the Plaintiffs have suffered injuries and deprivation of rights attributable to the Defendants. The U.S. Supreme Court has held that

standing is not confined to those who show economic harm, as "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society. *United States v. SCRAP,* 412 U.S. 669 (1973) (U.S. Supreme Court found standing to sue because the Plaintiffs had the right to enjoy the surrounding environment which was threatened by a corporation.)  Certainly the wellbeing of the family and the marital relationship is as important, if not more so, than aesthetic and environmental wellbeing.

Mohammed Amin Latif  has standing because he is definitely affected by the inadmissibility decision.  The fact that he is currently not in the U.S. should not be the determining factor for judicial review. [2]  Even as to noncitizens considered legally to be outside our borders, broad judicial review over questions of law has been permitted for a century via habeas corpus. *Gegiow v. Uhl*, 239 U.S. 3, 9-10 (1915).   The mere fact that Mr. Latif is outside the U.S. should not preclude judicial review.  Plaintiff Latif has suffered and continues to suffer the deprivation of living with his family and his marital relationship as well as being designated as someone connected to terrorism without redress to challenge that determination.

---

2 Plaintiff Latif has previously been in the U.S. under legal immigration status for many years without incident.

Loabat Amiri has standing in the case because she has she been deprived of the Constitutional right of the marital relationship. The Supreme Court has deemed "straightforward" the notion that "[t]he Due Process Clause provides that certain substantive rights-life, liberty, and property-cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).   Freedom of personal choice in matters of marriage and family life is, of course, one of the liberties protected by the Due Process Clause.   *See, Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-640, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974)  The Defendants recognize the right to a marital relationship implicated by the Constitution in their Motion to Dismiss.  Dkt. 20 at p.8 – 9 FN. 8.   As the concurring Justices in *Din* assumed, Plaintiff Amiri has a sufficient interest in the grant of a visa to her husband that this case can and should go forward

Furthermore, the TECS designation in Plaintiff Amiri's file has negative implications since this designation shows that a record has been created in some database about Plaintiff Latif with unknown implications. Additionally by having her spouse designated as someone connected to terrorism without knowing why damages her reputation.  She is unable to

19

redress these injuries without judicial review.

Fabod Latif has standing in this case because the right to reside with his family which includes his father is protected by the Immigration laws.  8 U.S.C. § 1151(b) (2) (A) (i); INA 203(d).

The stigma, humiliation, fear and uncertainty that come with the knowledge that a person has been designated as being involved with terrorism affects not only the individual, but his/her entire family.

The Complaint in this matter sufficiently alleges that the Plaintiffs were "adversely affected" or "aggrieved" within the meaning of the Administrative Procedure Act (APA), 5 U.S.C. 702.  The Defendant agencies have denied the Plaintiffs the ability to obtain information necessary to challenge the INA§212(a) (3) (B) determination or to request an exception. It is likely that they have shared this information with other agencies including state and local law enforcement.  In the case of Plaintiff Latif, the Defendants more likely than not shared the derogatory information with British officials. Congress provided for the ability to request an exemption from INA§212(a) (3) (B), yet the Defendants have denied this statutory right to the Plaintiffs.  The Defendants have acted arbitrarily and capriciously. There is no adequate way to challenge the determination other than through

20

judicial review.  Congress meant INA §212(a) (3) (B) to apply to persons

outside the U.S. not just to persons within the U.S.   This review applies to

both persons outside and within the U.S. Therefore, the Plaintiffs have

standing in this case and the Motion to dismiss should not be granted.


     5.   <u>The Plaintiffs have stated a claim under the U.S. Constitution</u>
        <u>and the various statutes</u>.

The Plaintiffs challenge the actions of all the Defendant agencies not

just the consular officers.  Therefore, the Defendants are incorrect in stating

that there is no claim under the APA because this is a not a consular

nonreviewability case.

The Plaintiffs have stated with sufficient specificity the claims against

the Defendants.  The complaint is supported by factual allegations.  The

Complaint states claims that are more than sheer possibility.

For example, The New York Times article referenced in the Complaint

states the fact that Muslims are targeted in the various terrorist databases.

Dkt.19 at ¶ 3.   This article supports the Plaintiffs' claim under the Equal

Protection Clause of the Fifth Amendment.

The Complaint states a claim under the Procedural Due Process

Clause of the Fifth Amendment of the U.S. Constitution. The Complaint states how the Plaintiffs have been deprived of their protected interests as a family and to be free from profiling from the government. Dkt.19 at ¶¶ 4, 6, and 7. This Response to the Defendants' Motion to Dismiss further explains how these rights are protected under the U.S. Constitution and the INA.

The Defendants argue that the Plaintiffs did not allege that the government maintains records of individuals belonging to a particular faith. Dkt. 20 at p.20. This is wholly incorrect since in fact, there is no requirement that such an allegation be made in the complaint. Defendants seem to be asking that the Plaintiffs prove their entire case before discovery. Rather, what is required is that the complaint include allegations of discrimination. The Complaint does precisely that – allege discrimination and provides a factual basis. Dkt. 19 at ¶¶ 68, 68, 70, 108, 109. Therefore, the Defendants' Motion to Dismiss should be denied.

While maintaining their argument that they have a right to confront the evidence against them under the Due Process clause of the U.S. Constitution, the Plaintiffs concede that the Sixth Amendment to the U.S. Constitution does not apply in this case.

The Plaintiffs are not stating that the Defendants are not allowed to

keep records on individuals; rather the Plaintiffs argue that those records

cannot be used in a discriminatory manner to deny immigration benefits.

## IV.    CONCLUSION

For the reasons stated above, the Defendants' Motion to Dismiss the

Plaintiffs' Complaint should be denied.


Respectfully submitted:                    Dated: November 24, 2017

 s/Caridad Pastor Cardinale
Caridad Pastor Cardinale (P43551)
Pastor & Associates, P.C.
Attorneys for the Plaintiffs
525 E. Big Beaver Road Suite 206
Troy, Michigan 48083
(248) 619-0065
carrie@pastorandassociates.com

## V.      CERTIFICATE OF SERVICE

I hereby certify that on November 24, 2017, that the Plaintiff's Motion for Leave to file First Amended Complaint was served upon Government's counsel by filing the same electronically with the ECF system which will notify opposing counsel:

Aaron  S. Goldsmith,  DOJ Senior Litigation Counsel

Respectfully submitted:

s/Caridad Pastor Cardinale
Caridad Pastor Cardinale
Pastor & Associates, P.C.
Attorneys for Plaintiffs
525 E. Big Beaver Road Suite 206
Troy, Michigan 48083
(248 ) 619-0065
carrie@pastorandassociates.com

25