UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
DETROIT, MICHIGAN

Loabat Amiri, et al.,
Plaintiffs,                                    Case No. 17-cv-12188


v.

                                               Hon. Thomas L. Ludington
                                               Mag. Judge Patricia T. Morris

Elaine Duke, et al.,

Defendants.

_____/


**PLAINTIFFS' SUPPLEMENTAL BRIEF**


Plaintiffs, Loabat Amiri, Mohamed Amin Latif, and Farbod Latif, by and through their undersigned counsel, submit this Supplemental Brief as requested by this Court in its Order of January 30, 2018.  We thank the Court for allowing the Plaintiffs this opportunity.

## STATEMENT OF ISSUES TO BE BRIEFED

1. Do the Plaintiffs have standing to challenge Amiri's and Latif's inclusion in the TECS database and inclusion in the TSDB and to seek an explanation for the designation?

2. Does Latif, as an unadmitted non-resident alien have the right to bring suit to bring suit to challenge his inclusion in the TECS database and TSDB and seek an explanation for the designation?

3. Have the Plaintiffs sated a claim for relief under counts 3, 4, 8 and 10?

4. Are the Plaintiffs required to exhaust administrative remedies by availing themselves of DHS TRIP prior to initiating this case?

# TABLE OF CONTENTS

I.      Statement of Facts                                                        1

II.     Plaintiffs have standing to challenge Amiri and Latif's
        Inclusion in the TECS database and are entitled to receive
        Information regarding the TECS records                                    2

III.    Plaintiff Latif as an unadmitted nonresident alien can assert
        a constitutional and/or statutory challenge to his inclusion
        in the TECS database.  He is entitled to receive information
        regarding his TECS records.                                              5

IV.     The Plaintiffs have stated a claim for relief under Counts 3
        (Procedural Due Process), 4 (Right to Travel), 8 (Administrative
        Procedures Act) and 10 (Substantive Due Process)                         7

        A. Count 3 – Procedural Due Process Clause- Failure to
           Provide Pre Deprivation and Post Deprivation Notice
           and Hearing                                                           8

        B. Count 4 – Right to Travel                                             13

        C. Count 8 – Administrative Procedures Act                              14

        D. Count 10 – Substantive Due Process                                   17

V.      The Plaintiffs are not required to exhaust the administrative
        Remedy of availing themselves of DHS TRIP                               18

VI.     Conclusion                                                              20

VII.    Proof of Service                                                        21

i

# INDEX OF AUTHORITIES

<u>CASES</u>

*Ahmed v. Ashcroft,* 286 F.3d 611 (2nd Cir. 2002)   12

*American-Arab Anti-Discrimination League v. Reno,*
70 F.3d 1045 (9th Cir. 1995)   10

*Bangura v. Hansen,* 434 F. 3d 487 (6th Cir. 2006)   15

*Bennett v. Spear,* 520 U.S. 154 (1997)   14

*Boumediene v. Bush,* 553 U.S. 723 (2008)   6

*Carver v. Bunch,* 946 F.2d 451 (6th Cir. 1991)   7,8

*Darby v. Cisneros, 509 US 137 (1993)*   19

*Durand v. Hanover Insurance Group, Incorporated,*
560 F.3d 436 (6th Cir. 2008)   19

*FEC v. Akins*, 524 U.S. 11, 19-20 (1998)   14

*Honig v. Doe,* 484 U.S. 305 (1988)   19

*Ibrahim v. Dep't of Homeland Sec.,* 669 F.3d 983
(9th Cir. 2012)   6,16

*Johnson v. Eisentrager,* 339 U.S. 763 (1950)   6

*Kent v. Dulles,* 357 U.S. 116 (1958)   13

*Kindhearts for Charitable Humanitarian Dev. Inc v.
Geithner (KindHearts I)* 647 F. Supp. 2d 857
(N.D. Ohio 2009)   4,11

*Latif v. Holder,* 969 F. Supp. 2d 1293 (Dist. Or. 2013)       13

*Latif v. Holder,* 28 F. Supp.3d 1134 (Dist. Or.2014)       4, 9,10,11,19

*Mathews v. Eldridge,* 424 U.S. 319 (1979)       9

*McCarthy v. Madigan*, 503 U.S. 140, 147-148 (1991)       19

*Mohamed v. Holder*, 995 F. Supp. 2d 520, 534
(E.D. Va 2014)       19

*Moore v. East Cleveland,* 431 U.S. 494 (1977)       17

*NCUA v. First Nat'l Bank & Trust.Co.,* 522 U.S. 479 (1998)       14

*Perkovic v. INS,* 33 F. 3d 615 (6th Cir. 1994)       18

*Shearson v. Holder,* 725 F.3d 588 (6th Cir. 2013)       11, 19

*Washington v. Glucksberg,* 521 U.S. 702 (1997)       17

STATUTES

Immigration and Nationality Act of 1965, §101(a)(15)F)(i)       6

5 U.S.C. §7046       14

OTHER

*U.N. Universal Declaration of Human Rights Art. 16 (3)*
The United Nations, 1948, art. 16.3       17

**iii**

## I.   Statement of Facts

Plaintiffs Amiri is a lawful permanent resident of the United States and Plaintiff

Farbod is a U.S. citizen born in California in 1997 and both reside in Michigan

Plaintiffs Amiri and Latif's younger child born [1] in the U.S. in 2006.  Plaintiff Latif

[2] is a citizen and national of the Great Britain and currently resides in London,

England.


This family has been attempting to reunite for many years by requesting the

assistance of attorneys and Congressman Dave Camp from Midland who helped

Latif's family in communicating with the authorities over time and also

communicated with the US embassy in London expressing his concern about the

consulate's error regarding the type of visa Latif was requesting. Latif's consular

interview lasted only a few minutes.  Dkt. 19 p.13 para.50



1

---

1 The minor child is not a party to this action.
2 Latif was diagnosed with urothelial carcinoma of the urinary bladder in November 2017.

Plaintiffs Amiri and Latif are challenging the TECS records in which they have
been named and therefore have been designated as subjects of records on TECS.
Dkt. 19 para 43.  As explained in the Defendants supplemental briefing, a subject
record is entered into TECS when a CBP officer determines that additional
scrutiny of a person is warranted.  Dkt. 36 p. 4

The Defendants state that this is not a watchlist case. Dkt 36 p.2.  The Plaintiffs
agree because they are not challenging the watchlist itself, but rather they are
challenging the TSDB only in so far as it may have provided the information that
has been included in TECS database regarding Plaintiffs Amiri and Latif.

## II.     Plaintiffs have standing to challenge Amiri and Latif's inclusion in the TECS database and are entitled to receive information regarding the TECS records.

TECS is a database containing records from various agencies.    Defendants state
that TECS records may include but are not limited to all types of violation of laws
and/or Customs and Border Protection (CBP) narratives regarding interactions
between CBP and a person.  Dkt. 36 p. 4.  Based on this definition, TECS contains
records of violation of laws which may be challenged in U.S. Courts.  (i.e.  drug

2

offenses, failure to appear in court, etc. – and there is no evidence that a conviction

would have had to precede entry into TECS since any derogatory information can

be included in TECS.)  TECS also contains interactions with CBP which can

include records of entry denials based on minor criminal records to Canadians'

failure to have the proper authorization to enter the country for the purposes

intended.  These scenarios do not necessarily implicate the need for secrecy

because of sensitive information.

The TSDB also known as the Terror Watchlist is the integrated terrorist identity

information system that compiles information from various agencies to be used by

various agencies.  Dkt. 36 p. 5.  This list contains information on persons deemed

dangerous to the U.S. national security.

Both the TECS and the Terror Watchlist (Watchlist) are compilations of

information from other agencies regarding individuals.  Other than the fact that the

TSDB appears to contain more sensitive information than TECS, the databases are

similar.

Persons who believe they are on the Watchlist have a right to receive information

3

used for their inclusion on that list. *Latif v. Holder*, 28 F. Supp. 3d 1134 (Dist. Or. 2014) (Court held that because due process requires Defendants to provide Plaintiffs with notice regarding their status on the No-Fly List and the reasons for placement on that List, it follows that such notice must be reasonably calculated to permit each Plaintiff to submit evidence relevant to the reasons for their respective inclusions on the No-Fly List.) *See also*, *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner (KindHearts I)*, 647 F. Supp. 2d 857, 868 (N.D. Ohio 2009)

Courts have allowed the release of the information to those on the Watchlist. It stands to reason, that since TECS contains less sensitive information, the Court would allow the release of TECS records information to the Plaintiffs.

Plaintiffs Amiri and Latif face ongoing injury from the denial of the information contained in the TECS records and an adequate process through which to contest the information in the TECS records. Both the courts in *Latif v. Holder and KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner* found standing to challenge the Watchlist and to receive information contained in that database. Therefore, the Plaintiffs have both a legitimate claim for information in the TECS records and standing.

4

Defendants state that Plaintiff Amiri has not alleged that the TECS record is inaccurate or that any alleged inaccuracy caused an injury.  It is precisely that fact that no information has ever been provided to Amiri regarding what is contained in her TECS record.  Since family members of suspected terrorists can also be placed in the TECS database, it may well be that either her TECS record or Latif's TECS record is the cause of Latif being unable to enter the U.S. [3]

The Plaintiffs have requested at a minimum a review of the TECS records in camera or a summary.  Dkt. 19 para B at p. 33. Plaintiff Amiri and Latif have standing to receive information regarding their inclusion in the TECS database.

**III.    Plaintiff Latif as an unadmitted nonresident alien can assert a constitutional and/or statutory challenge to his inclusion in the TECS database.  He is entitled to receive information regarding the TECS records.**

The right of an alien outside the United States to assert constitutional claims is

5

---

3 Today, the TSDB also includes information about certain foreign nationals who are associated with TERRORISM, TERRORIST ACTIVITY, or KNOWN or SUSPECTED TERRORIST(S) but for whom there is insufficient DEROGATORY INFORMATION to be independently watchlisted. This may include certain immediate family members of KNOWN or SUSPECTED TERRORISTS, or known associates of KNOWN or SUSPECTED TERRORISTS. https://theintercept.com/document/2014/07/23/march-2013-watchlisting-guidance/

based on "objective factors and practical concerns" rather than "formalism."
*Boumediene v. Bush*, 553 U.S. 723. 764 (2008)   An alien's right to assert
constitutional claims depends on his ties to the U.S.  *Johnson v. Eisentrager*, 339
U.S. 763 (1950).   The more substantial the claim, the greater the right to
protection under the U.S. Constitution.

In *Ibrahim,* the Plaintiff had a student visa and was returning from a trip abroad to
continue her studies when she was denied the ability to return to the U.S. to
continue her studies.  *Ibrahim v. Dep't of Homeland Sec*., 669 F.3d 983 (9th Cir.
2012)   A student visa is a nonimmigrant visa in which you are required to depart
the U.S. after completing your studies.  *INA 101(a) (15) (F) (i)* requires that an F-1
applicant possess a residence in a foreign country he or she has no intention of
abandoning.  The court in *Ibrahim* found sufficient ties to allow the plaintiff to
bring constitutional challenges to the court.  *Ibrahim v. Dep't of Homeland Sec.,*
669 F.3d 983,  (9th Cir. 2012) (She has established a substantial voluntary
connection with the United States through her Ph. D. studies at a distinguished
American university, and she wishes to maintain that connection).

6

Latif's ties to the U.S. are substantial.  Latif resided in the U.S. from 2006 until

2010 when he was denied parole to enter the U.S. Dkt. 19 para 30 – 42.   He has

two U.S. citizen children.  Dkt. 19 para 27.  His wife, Plaintiff, Amiri is a U.S.

permanent resident.  Dkt. 19 para.48.   He established a life in Michigan taking

care of his school age children while his wife participated in a medical residency

program.  Dkt. 19 para. 40.  The children attended school in Michigan and Latif

was building a life with his wife and children in the U.S.  His wife applied for

permanent residency for him after she received her U.S. permanent residency.

Therefore, while Latif may be an unadmitted nonresident alien, he has sufficient

ties to the U.S. to be able to assert constitutional claims.


For these reasons, Latif has a right to seek an explanation for the inclusion in the

TECS database and to challenge any adverse information in his TECS records.


**IV.    The Plaintiffs have stated a claim for relief under Counts 3
(Procedural Due Process), 4 (Right to Travel), 8 (Administrative
Procedures Act) and 10 (Substantive Due Process).**


The Sixth Circuit has determined that on a 12(b) (6) motion, the moving party

bears the burden of demonstrating that the plaintiff failed to state a claim. *Carver*

7

*v. Bunch,* 946 F.2d 451, 455 (6th Cir.1991).  The Defendants have failed to carry

their burden.  Other than generalizations about the Plaintiffs attempt at challenging

the doctrine of consular non reviewability, the Defendants fail to meet the burden

to show why a request for more information in the TECS database or a challenge to

inclusion in that database fails to state a claim in this case.

A.  <u>COUNT 3 - PROCEDURAL DUE PROCESS CLAUSE - FAILURE TO
    PROVIDE PRE DEPRIVATION AND POST DEPRIVATION NOTICE
    AND HEARING</u>

The right to be heard has little reality or worth unless one is informed that the

matter is pending and can choose for himself whether to appear or default,

acquiesce or contest.  *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)


The fundamental requirement of due process is the opportunity to be heard at a

meaningful time in a meaningful manner. The U.S. Supreme Court has set forth a

three-factor balancing test for courts to use when evaluating whether the

government has provided due process: (1) the private interest that will be affected

by the official action; (2) the risk of an erroneous deprivation of such interest

through the procedures used, and the probable value, if any, of additional or

substitute procedural safeguards; (3) the Government's interest, including the

8

function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail.  *Mathews v. Eldridge*, 424 U.S.

319, 333 (1979)


The private interest to be protected is the right to be free from governmental

restraints on liberty that is liberty to travel and to reside with one's family among

others as below.


The District Court in *Latif v. Holder*, held that there is a high risk of deprivation of

constitutional rights when the government relies on undisclosed information to list

persons on lists.  "The availability of judicial review does little to cure this risk of

error. While judicial review provides an independent examination of the existing

administrative record, that review is of the same one-sided and potentially

insufficient administrative record that TSC relied on in its listing decision without

any additional meaningful opportunity for the aggrieved traveler to submit

evidence intelligently in order to correct anticipated errors in the record. Moreover,

judicial review only extends to whether the government reasonably determined the

traveler meets the minimum substantive derogatory criteria; i.e., the reasonable

suspicion standard. Thus, the fundamental flaw at the administrative-review stage

9

(the combination of a one-sided record and a low evidentiary standard) carries over to the judicial-review stage. Accordingly, on this record the Court concludes the DHS TRIP redress process, including the judicial review of DHS TRIP determinations, contains a high risk of erroneous deprivation of Plaintiffs' constitutionally-protected interests." *Latif v. Holder*, 28 F. Supp. 3d 1134 (Dist.Or. 2014) (*American-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) (With respect to the use of classified information without disclosure," the court observed "'[o]ne would be hard pressed to design a procedure more likely to result in erroneous deprivations.'")

In particular, notice of inclusion on the No-Fly List through the DHS TRIP process after a traveler has been denied boarding would permit the complainant to make an intelligent decision about whether to pursue an administrative or judicial appeal. In addition, notice of the reasons for inclusion on the No-Fly List as well as an opportunity to present exculpatory evidence would help ensure the accuracy and completeness of the record to be considered at both the administrative and judicial stages and, at the very least, would provide aggrieved travelers the opportunity to correct factual errors with easy and persuasive explanations. *Latif v. Holder*, 28 F. Supp. 3d 1134 (Dist. Or. 2014)

10

"The government's failure to provide notice was particularly important in that
"[n]otice is to come from the government because it alone knows what it believes,
and why what it believes justifies its action." *KindHearts for Charitable
Humanitarian Dev., Inc. v. Geithner*, 647 F. Supp. 2d 857 (N.Dist. Ohio 2009)

Since the Defendants are already providing information to subjects of the Watchlist
by court order, it has already been decided that the governments' interests or its
burdens are insufficient to justify the denial of information and the ability to
challenge database determinations. *See, Latif v. Holder,* 28 F. Supp. 3d 1134 (Dist.
Or. 2014)

For procedural due process claims, allegations that the procedure is inadequate
sufficiently establishes an injury in fact for Article III standing. *Shearson v.
Holder,* 725 F. 3d 588 (6th Cir. 2013)

Plaintiffs' Amended Complaint details the lack of the government's redress
process, including its failure to provide Plaintiffs Latif and Amiri with any notice
of the reasons for the TECS records and a meaningful opportunity to contest any
information in the TECS records. Dkt. 19 para. 85, 124.   Because of a lack to

11

meaningfully redress of the TECS records, Plaintiff Latif cannot come to the U.S. for any reason at any time.  This is separate from the visa denial by the U.S. Consulate in London.  Latif is unable to request any other type of visa or for that matter come to the U.S. on the visa waiver program since he is a British national.[4] The Visa Waiver program by its nature does not involve any consular action but rather action by CBP in determining whether to allow Latif to enter the country. The right to travel is protected by the Constitution and Latif has substantial ties to the U.S. which allows his right to travel to be protected by the U.S. Constitution.

Plaintiff Amiri continues to suffer an injury in that she has a TECS record, whose contents are unknown, but can be used at any time to impede her travel. Additionally, she continues to be apart from her very ill husband.   While Amiri as a lawful permanent resident should not be required to move to another country, the fact is that she cannot move to another country without losing her permanent residency in the U.S. *Ahmed v. Ashcroft*, 286 F.3d 611 (2d. Cir. 2002).

12

---

4 Travelers seeking to enter the United States for business or tourism (B-1/B-2 visa), or in transit (C-1) for less than 90 days may be eligible to travel to the United States visa free under the Visa Waiver Program (VWP) if they meet specific requirements.  The VWP cannot be used if your purpose of travel is to study for credit, employment, work as foreign press, radio, film, journalists, or other information media, or take up permanent residence.
https://uk.usembassy.gov/visas/visa-waiver-program/

Plaintiff Farbod continues to be harmed by the allegation that his father is

somehow involved with terrorism.  There is a high probability that this is due to a

TECS record regarding Plaintiff Latif.

These procedural deficiencies continue to harm the Plaintiffs, giving them standing

to seek relief for violations of procedural due process.

   B. <u>Count 4 - Right to Travel</u>

The U.S. Supreme Court has explicitly recognized the right to international travel

since 1958 in ruling that the Secretary of State was not authorized to deny

passports to members of the Communist Party, stating that "the right to travel is a

part of the 'liberty' of which the citizen cannot be deprived without due process of

law under the Fifth Amendment." *Kent v. Dulles*, 357 U.S. 116, 125 (1958); *Latif*

*v. Holder,* 969 F. Supp. 2d 1293 (Dist. Or 2013)   (Plaintiffs have a

constitutionally-protected liberty interest in traveling internationally by air, which

is affected by being placed on the No Fly List.)  Plaintiff Latif cannot travel to the

U.S. which is sufficient interference with the liberty interest of international travel

because as previously discussed, there are many reasons why Plaintiff Latif might

13

need to travel to the U.S. which would not require the involvement of a consular officer.

C. Count 8 - Administrative Procedures Act

Defendants' failure to provide Plaintiffs Latif and Amiri with information in their TECS records states a claim under the Administrative Procedures Act (APA).   The courts have made clear that, while the APA is not a basis for federal jurisdiction, it does provide a "cause of action" for parties who have been adversely affected by agency action. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997) (stating that 5 USC §7046 provides a cause of action for all "final agency action for which there is no other adequate remedy in a court")

A person is adversely affected or aggrieved within the meaning of the APA if his or her claim meets the "zone of interest" test. *NCUA v. First Nat'l Bank & Trust Co.*, 522 U.S. 479 (1998) (holding that the APA incorporates the "zone of interest" test); *FEC v. Akins*, 524 U.S. 11, 19-20 (1998) (holding that Congress waives all prudential limitations on standing except for "the zone of interest" test when it grants aggrieved parties the right to sue).

14

In *Bangura v. Hansen*, the Sixth Circuit found that the zone of interest test requires a two part inquiry.  The first part requires that the court determine what interests the statute arguably was intended to protect, and second, the court must determine whether the "plaintiff's interests affected by the agency action in question are among them."  *Bangura v. Hansen,* 434 F.3d 487, 499 (6th Cir. 2006)

Latif's has an interest in obtaining the information in his TECS records.  Access to that information is protected by the Due Process clause of the U.S. Constitution.  It is logical to infer that whatever is contained in Plaintiff Latif's TECS record is adverse and is the cause of the visa denial.  This does not mean that requesting information on what is contained in the TECS records is an attack on consular non reviewability.   Rather whatever is included in the TECS records also prevents Latif from even being able to visit his family in the U.S. or to participate in any professional conferences or presentations even on the Visa Waiver program that he is entitled to use as a British citizen.  Clearly Latif's interest is affected by the Defendants inclusion of a TECS record.

Even without considering any other harm, Plaintiff Latif's inability to enter the U.S. is sufficient to confer standing to challenge his inclusion on the TECS

15

database.   *Ibrahim v. Dep't of Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012) (Even

if Ibrahim's injury were limited to her inability to enter the United States, she

would still have standing.)

If Latif had access to the information in the TECS database, then he might be able

to redress any adverse information which might result in being able to obtain a visa

to the U.S. or at a minimum entry to the U.S.  *Ibrahim v. Dep't of Homeland Sec.*,

669 F.3d 983 (9th Cir. 2012) (But it is a reasonable inference that removal of her

name from government watchlists would make a grant of a visa more likely. If

Ibrahim's name were removed from the TSDB, and thereby removed from the

Consular Lookout and Support System, the State Department would be more likely

to grant her a visa, given that it has relied on her alleged connection to terrorism as

the basis for revoking her visa and denying her application for a new one.)   Like

*Ibrahim*, there is a very likely possibility that Latif's injuries could be redressed by

a decision of this Court.

Plaintiffs' allegations are plainly sufficient to support standing.  The Plaintiffs fall

into the zone of interest intended to be protected by the INA and the U.S.

Constitution.   The Defendants' continued inclusion of a TECS record on Latif and

16

Amiri based on information which the Defendants refuse to disclose constitutes a sufficient harm for purposes of establishing standing. Defendants cannot separate unconstitutional conduct from APA review.

### D. Count 10 - Substantive Due Process

The family is the natural and fundamental group unit of society and is entitled to protection by society and the State. *U.N. Universal Declaration of Human Rights Art. 16 (3).* Substantive Due Process Rights are those rights which are implicit in the concept of ordered liberty or deeply rooted in the Nation's history or traditions. *Washington v. Glucksberg*, 521 U.S. 702 (1997). The Supreme Court held that "the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in the Nation's history and tradition." *Moore v. East Cleveland*, 431 U.S. 494 (1977). The government is prohibited from infringing on the rights of the family.

All three Plaintiffs' have been denied the right to live together as a family unit due to the TECS records. As previously stated, it is reasonable to infer that the TECS

17

records of Latif and Amiri is related to the reason why Latif cannot be with his

family in the U.S. either on a temporary or permanent basis.

### V.     The Plaintiffs are not required to exhaust the administrative remedy of availing themselves of DHS TRIP.

Plaintiffs agree with the Defendants that exhaustion of administrative remedies are

not required in this case.  Where a statute requires a plaintiff to exhaust his or her

administrative remedies before seeking judicial review, federal courts do not have

subject matter jurisdiction to review the plaintiff's claim until the plaintiff has

exhausted his or her administrative remedies. *Perkovic v. INS*, 33 F.3d 615, 619

(6th Cir. 1994)   However if the statute does not include a requirement to exhaust

administrative remedies, the Court cannot require exhaustion. *Darby v. Cisneros*,

509 U.S. 137 (1993) (where neither the relevant statute nor regulations require

exhaustion of administrative remedies prior to seeking judicial review, federal

courts cannot impose an exhaustion requirement as a prerequisite to review under

the Administrative Procedures Act ("APA")).   The collection of information which

composes the TECS records, was mandated by Congress in the *Homeland Security*

*Act of 2002,* (Pub.L. 107–296, 116 Stat. 2135, enacted November 25, 2002) (HSA)

The HSA does not require exhaustion of administrative remedies.

The Sixth Circuit required the exhaustion of administrative remedies in *Shearson v. Holder*, but the court also held that it was unclear under *Darby v. Cisneros,* 509 US 137 (1993) if a claim under the APA could proceed without exhausting administrative remedies if such exhaustion is not contained in the statute. *Shearson v. Holder,* 725 F.3d 588, FN 1 (6th Cir. 2013)   In that case, the government conceded that there was no redress process in the statute.  *Shearson v. Holder*, 725 F.3d. at 593.

Since the statute in the case at bar does not require exhaustion of administrative remedies, the Plaintiffs are not required to file DHS TRIP. *Mohamed v. Holder,* 995 F. Supp. 2d 520, 534 (E.D. Va 2014)

Furthermore, if an administrative remedy would be futile, exhaustion is not required. *McCarthy v. Madigan*, 503 U.S. 140, 147-148 (1991); *Honig v. Doe*, 484 U.S. 305, 327 (1988); *Durand v. Hanover Insurance Group, Incorporated*, 560 F.3d 436 (6th Cir. 2008) (ERISA claim).  DHS TRIP has been found to be a futile administrative remedy.  *Latif v. Holder*, 28 F. Supp. 3d 1134 (Dist. Or. 2014) (The

19

DHS TRIP process does not provide a meaningful mechanism for travelers who have been denied boarding to correct erroneous information in the government's terrorism databases. A traveler who has not been given any indication of the information that may be in the record does not have any way to correct that information. As a result, the DHS TRIP process "entirely fail[s] to consider an important aspect" of Congress's instructions with respect to travelers denied boarding because they are on the No-Fly List) *Id.*

Since DHS TRIP has been found to provide an inadequate administrative remedy, the Plaintiffs are not avail themselves of DHS TRIP.

## VI.    CONCLUSION

Furthermore, dismissal of the Plaintiffs remaining claims would be inappropriate at this stage of the litigation.

Respectfully submitted:                    Dated: March 14, 2018

 s/Caridad Pastor Cardinale
Caridad Pastor Cardinale (P43551)
Pastor & Associates, P.C.
Attorneys for the Plaintiffs
525 E. Big Beaver Road Suite 206
Troy, Michigan 48083
(248) 619-0065
carrie@pastorandassociates.com

20

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2018, that **PLAINTIFFS'**

**SUPPLEMENTAL BRIEF** was served upon Government's counsel by filing the

same electronically with the ECF system which will notify opposing counsel:


Aaron S. Goldsmith, DOJ Senior Litigation Counsel


Respectfully submitted:

s/Caridad Pastor Cardinale
Caridad Pastor Cardinale
Pastor & Associates, P.C.
Attorneys for Plaintiffs
525 E. Big Beaver Road Suite 206
Troy, Michigan 48083
(248) 619-0065
carrie@pastorandassociates.com

21