UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

Loabat Amiri, Mohammed Amin Latif,
Farbod Latif,
        Plaintiffs,                          Case No. 17-cv-12188
v.

Kirstjen Nielsen, Secretary, U.S. Department      Hon. Thomas L. Ludington
of Homeland Security, in her official                 Mag. Judge Patricia T. Morris
capacity, et al.,

        Defendants.
_____/

## ORDER GRANTING MOTION TO DISMISS AND DISMISSING AMENDED COMPLAINT

On October 5, 2017, Plaintiffs Loabat Amiri (Amiri), her husband Mohamed Amin Latif (Latif), and their son Farbod Latif (Farbod), filed an amended complaint challenging the denial of Latif's visa, and challenging Amiri and Latif's placement on a terrorist watch list. ECF No. 1. The amended complaint contains ten counts, alleging violations of the Immigration and Nationality Act of 1965 (INA), the Administrative Procedure Act (APA), and various constitutional provisions including Article 1 section 9 (Bill of Attainder) as well as amendments 1 (free exercise), 5 (equal protection, due process) and 6 (confrontation clause). The amended complaint names 9 official capacity defendants who are the directors of various executive departments and agencies including the Department of Homeland Security (DHS), the Department of State (DOS), Customs and Border Protection (CBP), Federal Bureau of Investigation (FBI), National Security Agency (NSA), National Counterterrorist Center (NCTC), Office of the Director of National Intelligence (ODNI), and the Terrorist Screening Center

(TSC). The amended complaint also names unidentified agents of the FBI, TSC, and CBP. Defendants moved to dismiss the amended complaint on October 19, 2017. ECF No. 20.[1]

On January 30, 2018 the Court granted Defendants' motion to dismiss in part. ECF No. 35. Pursuant to the doctrine of consular non-reviewability (the decisions of the Executive Branch in reviewing visa applications are generally not subject to judicial review), the Court dismissed all aspects of the amended complaint that challenged the inadmissibility determination and denial of Latif's visa. The Court also dismissed counts 1, 2, 5, 6, 7, and 9 in their entirety for failure to state a claim upon which relief can be granted under Rule 12(b)(6). Fed. R. Civ. P. 12(b)(6).

Because the parties had not briefed several outstanding issues, the Court directed supplemental briefing to address the following: 1) whether Plaintiffs have standing to challenge Amiri and Latif's alleged inclusion on the TECS database and the TSDB and to seek an explanation for the designation, 2) whether Plaintiff Latif, as an unadmitted non-resident alien, has a right to assert a constitutional or statutory challenge to his alleged inclusion on the TECS database and TSDB and seek an explanation for the designation, 3) whether Plaintiffs have stated a claim for relief under counts 3, 4, 8 and 10, and 4) whether Plaintiffs were required to exhaust the administrative remedies furnished by the DHS Traveler Redress Inquiry Program (TRIP) prior to initiating this case. Because Plaintiffs do not have standing, this opinion will primarily address the first issue. To the extent Plaintiff Latif might have standing if he pursued different relief, the exhaustion doctrine would apply. Thus, the exhaustion doctrine will be addressed briefly as well.

---

[1] A detailed factually summary is contained in the order granting Defendants' motion to dismiss in part. ECF No. 35.

# I.

## A.

Federal Rule of Civil Procedure 12(b)(1) provides for dismissal for lack of subject matter jurisdiction. Article III of the United States Constitution prescribes that federal courts may exercise jurisdiction only where an actual "case or controversy" exists. *See* U.S. Const. art. III, § 2. "Courts have explained the case or controversy requirement through a series of justiciability doctrines, including, perhaps the most important, that a litigant must have standing to invoke the jurisdiction of the federal courts." *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 709–10 (6th Cir. 2015) (quotations omitted).

"The irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). First, Plaintiff must have suffered an injury in fact – an "invasion of a legally protected interest" which is "concrete and particularized" and not "conjectural or hypothetical." *Id.* at 561. Second, the injury must be fairly traceable to the conduct complained of. *Id.* Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.*

"The standing inquiry is particularly rigorous when reaching the merits of the dispute 'would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional.'" *Parsons*, 801 F.3d at 710 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408, (2013)). The party invoking federal jurisdiction bears the burden of establishing the standing elements. *Lujan*, 504 U.S. at 561.

## B.

The Ninth Circuit has addressed the question of whether an alien has standing to challenge her inclusion on the No-Fly list where her visa application was also denied. *Ibrahim v.*

*Dep't of Homeland Sec.*, 669 F.3d 983 (9th Cir. 2012). In *Ibrahim*, the plaintiff was an alien who was in the United States on a student visa when she was detained and prevented from boarding a plane at the San Francisco airport. *Id.* She filed suit against numerous federal agencies seeking a permanent injunction directing the government to remove her name from the No-Fly list. *Id.* In addressing whether she had standing to challenge her inclusion on the list, the court noted that "the government mischaracterizes Ibrahim's injury by focusing solely on her inability to return to the United States." *Id.* at 993. The court further explained that Ibrahim suffered distinct injuries due to her presence on the No-Fly list: "The no Fly-List prevents her from boarding any U.S. carrier whether or not a flight departs from or lands in the United States. It also prevents her from flying over U.S. airspace. These injuries are unrelated to her lack of a visa." *Id.*

> The court also noted that:
>
> Even if Ibrahim's injury were limited to her inability to enter the United States, she would still have standing. Ibrahim does not challenge the revocation of her visa, as decisions of consular officers to deny a visa are immune from judicial review. But it is a reasonable inference that removal of her name from government watchlists would make a grant of a visa more likely. If Ibrahim's name were removed from the TSDB, and thereby removed from the Consular Lookout and Support System, the State Department would be likely to grant her a visa, given that it has relied on her alleged connection to terrorism as the basis for revoking her visa and denying her application for a new one. Though Ibrahim's future ability to obtain a visa is uncertain and we would be powerless to review a denial, plaintiff need not demonstrate that there is a guarantee that their injuries will be redressed by a favorable decision . . . Plaintiffs must show only that a favorable decision is *likely* to redress their injuries, not that a favorable decision *will inevitably* redress their injuries . . . As the district court correctly observed, while obtaining a visa may stand as a potential obstacle to her entry into the United states, it does not completely foreclose redressibility. Ibrahim is not required to solve all roadblocks simultaneously and is entitled to tackle one roadblock at a time.

*Id.* (internal quotations omitted) (emphasis in original).

More recently, the Sixth Circuit has addressed the issue of whether an individual has standing to challenge his or her designation on a terrorist watchlist. In *Shearson*, the United

States Customs and Border Protection (CBP) detained the plaintiff, a U.S. Citizen, and her daughter as they drove into the U.S. from Canada. *Shearson v. Holder*, 725 F.3d 588, 589 (6th Cir. 2013). The vehicle was searched and the plaintiff and her daughter were ultimately allowed to enter the U.S.. The plaintiff filed a Freedom of Information Act (FOIA) request for documents related to her detention, and she ultimately obtained documents revealing that CBP detained and searched her because "when Customs entered her name into its system, her name returned 'an Armed and Dangerous' designation in the Customs' terrorist database." *Id.* at 590. The plaintiff sought prospective declaratory and injunctive relief claiming that her inclusion on a terrorist watchlist violated the Procedural Due Process guarantees of the Fifth Amendment. The plaintiff argued "not only that the government wrongly detained her in 2006, but also that, by remaining on the list, the government is "constrain[ing] her right to travel freely internationally, to be treated like others situated similarly to her, and has subjected her to the stigma that attends placement on a government watchlist." *Id.* at 593. The court concluded that "Shearson's past detention, in conjunction with the presumption that she remains on terrorist watchlists, makes it likely that she is 'realistically threatened with future injury.'" *Id.* (quoting *Ibrahim*, 538 F.3d at 1256 n. 9.). The Court ultimately held, however, that the plaintiff failed to exhaust administrative remedies by failing to avail herself of DHS's Traveler Redress Inquiry Program (TRIP)).

## II.

In their supplemental brief, Defendants argue that Plaintiffs do not have standing to challenge their alleged inclusion on the TECS database and the TSDB and to seek an explanation for the designation because Plaintiffs allege no injury independent from the denial of Latif's visa. Def. Supp. Br. at 7-13, ECF No. 36. For these same reasons, Defendants argue that Plaintiffs have failed to state a claim because they have identified no constitutional right that has been

invaded. Plaintiffs respond that they have indeed alleged injuries independent from the denial of Latif's visa, including travel impediments, reputational injury, as well as Latif's inability to enter the U.S..

The remaining counts from the amended complaint are counts 3, 4, 8, and 10, insofar as they allege that Plaintiffs Amiri and Latif are wrongfully listed in TECS and the TSDB (and not insofar as they challenge the denial of Latif's visa). Count 3 alleges that Defendants violated the Fifth Amendment Procedural Due Process clause because Defendants failed to provide Plaintiffs a pre-deprivation notice and an opportunity to contest the designations. Am. Compl. ¶¶ 82, 84-85. Count 4 alleges that Defendants violated the Substantive Due Process Clause of the Fifth Amendment by infringing on Plaintiffs' right to international travel. Specifically, Plaintiffs allege that "they are unable to travel internationally because of the TECS designation placed on Amiri and Latif . . ." *Id.* ¶ 91. Count 10 also alleges that Defendants violated the Substantive Due Process Clause of the Fifth Amendment because Plaintiff Latif "has suffered a 'change in legal status'—he is legally barred from travelling to or from the United States, which he would do had he not been subjected to the inadmissibility and TECS designation." *Id.* at ¶ 135. Count 8 alleges that Defendants violated the Administrative Procedure Act (APA) because "Defendants' actions in preventing Plaintiffs' travel into the United States were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." *Id.* ¶ 124.

**A.**

Plaintiff Amiri lacks standing to challenge her alleged inclusion on the TECS database and TSDB and to seek an explanation for the designation because she has alleged no concrete injury connected to her inclusion on these lists that is actual or imminent, and that is likely to be redressed by a favorable ruling. She alleges that she is "unable to travel internationally because

of the TECS designation" yet identifies no instance in which she has ever unsuccessfully attempted to travel as a result of the TECS designation. Plaintiff Amiri's allegations are distinguishable from the allegations of the plaintiff in *Ibrahim*, whose designation on the No-Fly list prevented her from boarding any U.S. Carrier, whether or not the flight departed from or landed in the U.S., and also prevented her from flying over U.S. airspace. *Ibrahim*, 669 F.3d at 993. Plaintiff Amiri, by contrast, alleges no such travel impediments. The court in *Ibrahim* also noted that "[e]ven if Ibrahim's injury were limited to her inability to enter the United States," this is a distinct injury from the denial of her visa, and is sufficient to support standing. *Id.* Plaintiff Amiri, by contrast, has not alleged that she is prevented from entering the United States. To the contrary, she is a permanent resident currently residing in Midland, Michigan. Am. Compl. ¶ 13.

*Shearson* is also distinguishable. In *Shearson*, the plaintiff obtained documents via a FOIA request which confirmed that she was detained by the CBP at a port of entry due to her presence in the TECS database. *Shearson*, 725 F.3d at 589–90. The court concluded that "Shearson's past detention, in conjunction with the presumption that she remains on terrorist watchlists, makes it likely that she is 'realistically threatened with future injury.'" *Id.* Here, by contrast, Plaintiff Amiri's allegations are inconsistent with the notion that she was ever detained, or that her travel was ever impeded, due to her alleged TECS designation. To the contrary, she alleges that she and her family traveled without incident to and from Europe on multiple occasions, were checked against all security databases by Defendant CBP, and were re-admitted to the U.S. on each occasion. Am. Compl. ¶ 35.

The first time Plaintiff Amiri alleges that she ever experienced any travel impediment was in April of 2010. The impediment, however, was not connected to her alleged TECS

designation. Rather, it was caused by the expiration of her and her husband's H visas which required renewal. *Id.* ¶¶ 36-39. It was not until November 25, 2010, however, that a TECS record was allegedly created for Amiri and Latif. *Id.* ¶ 43. Thus, the delay Plaintiffs experienced months earlier was not fairly attributable to the creation of the TECS records. After the creation of the TECS record, Latif was detained for 30 days pending removal to Great Britain. *Id.* ¶ 44. There is no allegation, however, that Amiri was ever detained following the creation of the TECS record, or ever experienced any subsequent travel impediment.

In their supplemental brief, Plaintiffs contend that Amiri's TECS record "can be used at any time to impede her travel." Pl. Suppl. Br. at 12, ECF No. 38. To support standing, however, an injury in fact must be "concrete and particularized" and not "conjectural or hypothetical." *Lujan*, 504 U.S. at 561. Latif's previous detention by the CBP due to his TECS designation makes it likely that he is "realistically threatened with future injury," namely future travel impediments due to his TECS designation. *See Shearson*, 725 F.3d at 593 (quoting *Ibrahim*, 538 F.3d at 1256 n. 9). Plaintiff Amiri, however, is not realistically threatened with future injury. Her contention that her TECS record "can be used at any time to impede her travel" is purely hypothetical, as no such travel impediment has occurred in the past.

Plaintiffs cite *Latif* and *KindHearts* for the proposition that "[p]ersons who believe they are on the Watchlist have a right to receive information used for their inclusion on that list." Pl. Suppl. Br. at 3-4 (citing *Latif v. Holder*, 28 F. Supp. 3d 1134 (Dist. Or. 2014)); *KindHearts for Charitable Humanitarian Dev., Inc. v. Geithner* (KindHearts I), 647 F. Supp. 2d 857, 868 (N.D. Ohio 2009)). Plaintiffs appear to be arguing that mere presence on the list itself, divorced from any harmful consequence of being listed, is sufficient to confer Article III standing. Plaintiffs contend that "Both the courts in *Latif v. Holder* and *KindHearts for Charitable Humanitarian*

*Dev., Inc. v. Geithner* found standing to challenge the Watchlist and to receive information contained in that database." Pl. Supp. Br. at 4.

In fact, neither of these cases explicitly discusses standing. At most, *Latif* indirectly addresses the injury-in-fact element by finding that the plaintiffs had a constitutionally protected liberty interest in traveling internationally by air, and had the same interest in their reputations, both of which were burdened due to their presence on the No-Fly list. *Latif v. Holder*, 28 F. Supp. 3d at 1148. Plaintiffs make no meaningful attempt to explain how this case is applicable. Merely establishing the existence of a constitutionally protected interest does not end the standing inquiry. That constitutionally protected interest must also have been *invaded* in order for a plaintiff to have suffered an injury. As discussed above, being listed on the No-Fly list results in unique travel impediments such as the inability to fly over U.S. Airspace and the inability to board a U.S. Carrier. As discussed above, there is no allegation that Plaintiff Amiri has suffered any travel impediment connected to her alleged TECS designation.[2]

**B.**

Plaintiff Latif, on the other hand, has alleged injuries connected to his TECS designation, including that his travel has been impeded, and that he has been denied entry to the U.S. because he is wrongfully listed on TECS. Am. Compl. ¶¶ 44, 135. Nevertheless, these injuries are not likely to be redressed by a favorable ruling. Plaintiffs assert that their TECS designation is based on unsubstantiated information, is supported by no substantial justification that they are in any

---

[2] Plaintiffs also allege "reputational injury." Specifically, Plaintiffs allege that "As a direct and proximate cause of Defendants actions, the Plaintiffs have suffered harm to their reputation", that they "have been stigmatized as security risks with ties to terrorism." Am. Compl. ¶¶ 94-95. These allegations are too vague and non-specific to support Article III standing. There is no allegation that their TECS records have been publicized. In contrast to the facts of *Latif v. Holder*, 28 F. Supp. 3d 1134, 1150 (D. Or. 2014), in which the stigmatizing information was publically disclosed to a "small group of individuals in the same area of the airport as the traveler when the traveler is denied boarding," Plaintiff Amiri does not allege that any stigmatizing information about her was ever made publically known.

way associated with terrorism, and is based on religious profiling. *Id.* ¶¶ 69, 70. Notably, however, Plaintiffs do not seek to have their name removed from TECS or the underlying TSDB.[3]

Rather, Plaintiffs ask the Court to "Order the Defendants to provide both Plaintiffs Latif and Amiri the explanation for the TECS designation at a minimum in camera or in a summary," and to "Order the Defendants to provide the Plaintiffs with the agency and person responsible for making . . . the TECS reports at a minimum in camera or in a summary." Am. Compl. at 33. To satisfy the redressability prong of the Article III standing test, the relief the plaintiff is seeking must provide redress for the injury. *Parsons v. U.S. Dep't of Justice*, 801 F.3d 701, 715 (6th Cir. 2015). Plaintiffs contend that "If Latif had access to the information in the TECS database, then he might be able to redress any adverse information which might result in being able to obtain a visa to the U.S. or at a minimum entry to the U.S." Pl. Supp. Br. at 16 (citing *Ibrahim*, 669 F.3d 983). In order for a plaintiff to have standing, however, "it must be *likely*, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (emphasis added).

Although the gravamen of Plaintiff Latif's redressibility theory is far from clear, it appears as though he is arguing that, if he is provided information concerning his TECS designation, this might provide him an explanation for why the government considers him to be associated with terrorist activity (assuming this is even the reason for the TECS designation).

---

[3] The plaintiff in *Ibrahim*, by contrast, did seek to have her name removed from the No-Fly list. *See Ibrahim*, 669 F.3d at 993. The plaintiff in *Shearson* also sought to have her information removed from the TECS database and the TSDB. *See Shearson v. Holder*, 865 F. Supp. 2d 850, 861 (N.D. Ohio 2011), aff'd, 725 F.3d 588 (6th Cir. 2013). Furthermore, in *Scherfen*, the plaintiffs sought to be removed from the TSDB. *Scherfen v. U.S. Dep't of Homeland Sec.*, No. 3:CV-08-1554, 2010 WL 456784, at *1 (M.D. Pa. Feb. 2, 2010)

Latif might then be able to address the conduct in question, which might alleviate the government's suspicions concerning his connection to terrorist activity. The government might then remove him from the databases, after which he might be able to obtain a visa. This is far too speculative a scenario to support article III standing, particularly given what is known about the TECS system and the TSDB (the database that the TECS system draws information from). "In contrast to TIDE[4] (operated by NCTC), the TSDB (operated by TSC) does not include 'derogatory intelligence information.' Instead, it consists of 'sensitive but unclassified terrorist identity information consisting of biographic identifying information such as name or date of birth or biometric information such as photographs, iris scans, and fingerprints." CONG. RES. SERV. REP, TERRORIST DATABASES AND THE NO FLY LIST: PROCEDURAL DUE PROCESS AND HURDLES TO LITIGATION at 2, https://fas.org/sgp/crs/homesec/R43730.pdf (last visited Jan. 15, 2018). at 2–3 (quoting *Mohamed v. Holder*, 995 F. Supp. 2d 520, 526 n.8 (E.D. Va. 2014)).

Even if Plaintiff Latif did seek to have his name removed from the list, however, he would face another obstacle, namely the exhaustion requirement. In *Shearson*, the court held that a citizen alleging her name erroneously appeared in TECS, resulting in her being detained at a port of entry, was required to exhaust her administrative remedies by submitting a claim via the DHS Traveler Redress Inquiry Program (TRIP) prior to bringing a Fifth Amendment Procedural Due Process claim against the DHS and the CBP. *Shearson*, 725 F.3d at 594 (6th Cir. 2013).

The plaintiff had argued that TRIP was "an inadequate administrative procedure because it was created to solve the problems of air travelers who have been misidentified as being on the terrorist watchlist," and was not a process "for resolving the problems of individuals actually on

---

[4] The NCTC's Terrorist Identities Datamart Environment (TIDE) is the "central repository of the U.S. Government containing derogatory information about suspected international terrorists." CONG. RES. SERV. REP, TERRORIST DATABASES AND THE NO FLY LIST: PROCEDURAL DUE PROCESS AND HURDLES TO LITIGATION at 2, https://fas.org/sgp/crs/homesec/R43730.pdf (last visited Jan. 15, 2018). Due to the national security importance of this information, the contents of the database are classified. *Id.*

the watchlist or of land travelers." *Shearson* at 594 (6th Cir. 2013). Furthermore, the District Court's dismissal of the action for failure to exhaust occurred approximately five years after the incident in which plaintiff was detained by the CBP.[5] *Shearson v. Holder*, 865 F. Supp. 2d 850 (N.D. Ohio 2011), *aff'd,* 725 F.3d 588 (6th Cir. 2013). Thus, one could question what value the TRIP program could provide to the plaintiff at that point.

Nevertheless, the Sixth Circuit affirmed the dismissal:

> While there are deficiencies in the Redress Program process, we agree with the district court that Shearson should be required to exhaust her administrative procedures by submitting a traveler inquiry form through the Redress Program before she can proceed with this case. There is very little guidance in any Circuit considering administrative exhaustion as it pertains to the Redress Program and there is no case law in this Circuit. However, when considering the purposes of the exhaustion doctrine, making Shearson submit a Traveler Redress inquiry is reasonable to promote judicial efficiency and allow the agencies involved an opportunity to resolve problems with their procedures . . . . Additionally, forcing Shearson to advance her claims through the Program will promote judicial efficiency, despite the Redress Program's shortcomings. There are thousands of people on the government's terrorist watchlists, and there are thousands more people each year whom the government misidentifies as being on the lists. The Redress Program procedures help force an internal review of the data and may lead to the removal of a person's name from the terrorist database. While the Redress Program's determination letters do not provide a direct answer for travelers about whether the terrorist watchlist has included or continues to include them, the Redress Program review process creates a record that may be reviewed by a judge *in camera.* This record will help a court better determine the issues, determine whether a plaintiff has standing, and whether the plaintiff's claim is moot. *Id.* Making it easier for plaintiffs to bypass the Redress Program will burden the courts when many cases can be easily resolved.

*Shearson v. Holder*, 725 F.3d 588, 595 (6th Cir. 2013). Here, Plaintiff Latif alleges he was detained by the CBP due to his TECS record, which he contends is based on unsubstantiated information. Am. Compl. ¶¶ 44, 69. Plaintiffs ask the Court to direct Defendants to produce records for *in camera* review. This relief could potentially be obtained via the DHS TRIP

---

[5] Similarly here, Plaintiff Latif was detained by the CBP more than 7 years ago.

-12-

process, which Plaintiff Latif has not availed himself of. Indeed, the plaintiffs in *Scherfen* invoked the DHS TRIP process, requesting removal from the TSDB, and the documents produced through that administrative process were reviewed *in camera* by the Court. *Scherfen v. U.S. Dep't of Homeland Sec.*, 2010 WL 456784, at *1-2, 7-8 (M.D. Pa. Feb. 2, 2010). This aided the court in determining whether the plaintiffs had standing to pursue further declaratory or injunctive relief. *Id.* Similar judicial efficiencies could be gained by Plaintiff Latif submitting a DHS TRIP inquiry.[6]

In sum, Plaintiffs have not established that they have standing to seek information concerning their inclusion in the TECS database and the TSDB. Although it appears Plaintiff Latif would have standing to pursue different relief (namely removal of his information from these databases), he has not sought such relief. Furthermore, even if he had done so, he would first be required to exhaust administrative remedies via DHS TRIP. Accordingly, the amended complaint will be dismissed.

## III.

---

[6] Plaintiffs contend that the exhaustion requirement doesn't apply, notwithstanding the holding of *Shearson*, because the *Shearson* court observed in a footnote that it was unclear whether the exhaustion requirement applied to an APA claim. Pl. Supp. Br. at 18-20 (citing *Shearson v. Holder*, 725 F.3d at 594). Plaintiffs overlook the fact that the district court in *Shearson* held that the plaintiff had failed to state a claim under the APA, even if the plaintiff had met the prudential standing requirement of the APA. *Shearson v. Holder*, 865 F. Supp. 2d 850, 866 (N.D. Ohio 2011), *aff'd,* 725 F.3d 588 (6th Cir. 2013). The district held that plaintiff's APA claim was not viable because "Plaintiff has not alleged that a judicially manageable standard exists for reviewing Defendants' inclusion of persons on the TSDB or a derivative watch list. Nor is there any statute that provides a standard of review. Instead, Defendants' authority to create and maintain watchlists is derived from the President's Executive powers and Defendants' general authority to secure the national borders." *Id.* The district court's holding in *Shearson* as to a challenge under the APA to a plaintiff's inclusion in the TECS database and the TSDB is thus equally applicable here, and that holding was not disturbed by the Sixth Circuit on appeal. *Shearson v. Holder*, 725 F.3d at 588. Plaintiffs also contend that exhaustion is not required in this case because it would be futile. Pl. Supp. Br. at 19-20. Plaintiffs contend that DHS TRIP has been found to be a futile because it is an ineffective administrative remedy. To support this assertion Plaintiffs cite a district court opinion from the District of Oregon. However, Plaintiffs ignore the fact that the Sixth Circuit in *Shearson* (which is the controlling decision here), found that exhaustion via DHS TRIP would *not* be futile despite the admitted "deficiencies in the Redress Program process." *Shearson v. Holder*, 725 F.3d at 595.

Accordingly, it is **ORDERED** that the motion to dismiss, ECF No. 20, is **GRANTED.**

It is further **ORDERED** that the amended complaint, ECF No. 19, is **DISMISSED**.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 9, 2018

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 9, 2018.

s/Kelly Winslow  
KELLY WINSLOW, Case Manager